# CASES DETERMINED

## January Term, 1883.

The State ex rel. The State Agricultural Society vs.
Timme, Secretary of State. .

*November 21, 1882 — January 9, 1883.*

*Statutes construed: Misnomer.*

Ch. 294, Laws of 1882, appropriated $2,000 "to the state agricultural
society, . . . provided, that their next annual exhibition shall not
be held at the same time of the next annual exhibition of the north-
ern agricultural and mechanical society." Ch. 243, approved two
days previous, appropriated $1,000 to the Northern *Wisconsin*
Agricultural and Mechanical *Association*, "provided, that their
next annual exhibition shall not be held at the same time of the
next annual exhibition of the State Agricultural Society." The
State Agricultural Society held its annual exhibition September
11–16, 1882; and the Northern Wisconsin Agricultural and Me-
chanical Association held its exhibition September 12–15, 1882,
without at any time prior thereto having notified the former soci-
ety of the time appointed for such holding. There was no corpo-
ration or society in the state, other than the latter, to which the
which the proviso in ch. 294 could apply. *Held,* that neither
society could claim the money so appropriated to it, and, the facts
appearing from the relation in an application for a writ of *man-
damus* to compel the payment to the State Agricultural Society of
the sum appropriated to it, the application is quashed and a rule
thereon to show cause is discharged.

MANDAMUS to the Secretary of State.

The case is thus stated by Mr. Justice Cassoday:

"This is a motion to discharge a rule to show cause, and
to quash an application to this court for a peremptory writ

of *mandamus*, for the reason that the relation fails to state facts sufficient to entitle the relator to such writ. It appears from the relation that the relator is a corporation duly organized and existing under and by virtue of the laws of this state; that March 22, 1882, the relator appointed and fixed at Fond du Lac, September 11 to 16, 1882, inclusive, as the time and place for holding its annual exhibition for that year, and that it was so held at that time and place; that October 15, 1882, the relator requested and demanded of the respondent that he draw his warrant on the state treasurer for the payment to Cyrus Miner, as treasurer of the relator, the sum of $2,000, pursuant to and in payment of the appropriation made to the relator by ch. 294, Laws of 1882, and at which time there was money in the general fund of the state, not otherwise appropriated, sufficient to pay such appropriation, but which request and demand was refused for the reason, as the fact is, that an association named the "Northern Wisconsin Agricultural and Mechanical Association" held its annual exhibition for said year, September 12th to 15th inclusive, but did not at any time prior to said holding the same notify the relator of the time appointed for such holding."

*William Ruger*, for the relator.

The cause was submitted for the respondent on the brief of the *Attorney General*.

CASSODAY, J. A writ of *mandamus* is invoked to enforce payment of money claimed as having been appropriated to the relator by ch. 294, Laws of 1882, in the language: "There is hereby appropriated to the *state agricultural society* the sum of $2,000, out of any money in the general fund not otherwise appropriated; provided, that their next annual exhibition shall not be held at the same time of the next annual exhibition of the northern agricultural and mechanical society." Ch. 294, Laws of 1882. This act was

approved March 30, 1882.   Two days previously another act
was approved appropriating money in the following language:
" There is hereby appropriated to the Northern *Wisconsin*
Agricultural and Mechanical Association the sum of $1,000,
out of any money in the general fund not otherwise appro-
priated; provided, that their next annual exhibition shall not
be held at the same time of the next annual exhibition of
the *State Agricultural Society*."    Ch. 243, Laws of 1882.
The first act originated in the assembly, and the second in
the senate.

We agree with the learned counsel for the relator that
questions of misdescription in statutes, like other questions
calling for construction, merely present questions of intent,
and where the language is plain, certain, and unambiguous,
interpretation is not allowable.   He therefore insists that the
court has no right, by way of construction, to hold that the
" northern agricultural and mechanical society," mentioned in
the act of appropriation under which the relator claims, is
the " Northern *Wisconsin* Agricultural and Mechanical Associ-
ation " mentioned in ch. 243 and in the relation, as holding
a fair during the time in question.   But ch. 294 refers to the
northern agricultural and mechanical society in general lan-
guage, without quotation marks or capitals, as an existing
society.   Being such, it must have been previously organized
under corporate authority, and expected to hold a fair during
the year 1882.   According to Lord BACON, "all words,
whether they be in deeds or statutes or otherwise, if they be
general and not express or precise, shall be restrained unto
the fitness of the matter or person."

As stated by counsel, there are many rules of interpreta-
tion, and much refinement in the books, but all agree, we
apprehend, that " it is not the words of the law, but the in-
ternal sense of it, that makes the law.   The letter of the
law is the body; the sense and reason of the law is the soul.
Every statute ought to be expounded, not according to the

letter, but according to the meaning. . . . The enlarged interpretation of a law will penetrate the soul and spirit of a law, and reach the intent and meaning of a legislator." Potter's Dwarris, 175. We not only feel justified, but in duty bound, to look into the legislation of the state, for the purpose of ascertaining, if we can, to what corporate body the legislature referred by the words "the next annual exhibition of the northern agricultural and mechanical society," found in ch. 294. It is quite obvious that they must have intended some society which had already held an annual exhibition, or else they would not have said "the *next* annual exhibition." The fact that at substantially the same time the legislature made an appropriation to a society by that same name, except that the word "Wisconsin" was interjected between the words "Northern" and "Agricultural," and the word "Association" substituted for the word "society," with a similar proviso that *their next exhibition* shall not be held at the same time of the next annual exhibition of the "State Agricultural Society," is of itself a forcible suggestion that the society to which the appropriation was made by ch. 243 was the same society which the legislature had in mind and intended to refer to in adopting the proviso in ch. 294. It is true, the word "Wisconsin" is not in that proviso. The proviso, however, must refer, not only to a society in Wisconsin, but in northern Wisconsin, for it says, "the *northern* agricultural and mechanical society." It must also be inferred that the legislature must have regarded it as so located that the holding of the next annual exhibition of the *state agricultural society* at the same time of such northern agricultural and mechanical society would materially interfere with it; otherwise there would seem to be no object in enacting the proviso. By looking into the legislation, we find that the "Northern Wisconsin Agricultural and Mechanical Association" was incorporated by ch. 413, Laws of 1871, as being located at Oshkosh. By that name it has

been recognized as an institution of the state, and moneys have from time to time been appropriated to it. Ch. 102, Laws of 1875; ch. 226, Laws of 1876; ch. 208, Laws of 1877; ch. 48, Laws of 1878; ch. 72, Laws of 1879; ch. 122, Laws of 1880; ch. 125, Laws of 1881. Its proximity to Fond du Lac, where the state fair was held that year, was such as to suggest a pecuniary inducement on the part of the state to each society in order to secure, if possible, the holding of their respective fairs at different periods. It does not appear from the relation that there is, and we are not aware of, any other incorporation or society in the state to which the words in the proviso of ch. 294, Laws of 1882, could apply; and hence we must hold that they were intended to apply to this well-established and well-recognized association.

Besides, if we were to adopt the sharp literal rule of construction urged, it would be most fatal to this application. The appropriation here claimed by the relator was made "to the *state agricultural society*," which is alleged to be a corporation duly organized and existing under and by virtue of the laws of this state. The only corporation under the laws of this state answering that description, that we are aware of, is the "Wisconsin *State Agricultural Society*," which was incorporated by ch. 5, Laws of 1853. By that name it has ever since been continued and recognized by the legislature of the state. Sec. 1, ch. 80, R. S. 1858; sec. 1456, R. S. As we understand, it is the officers of that society who are here claiming the appropriation in question, and we do not think they should be precluded from getting it merely by reason of the omission of the word "Wisconsin." This court held that the word "Milwaukee," before the word "Mutual," in the name of an insurance company, "must be regarded as a mere clerical error," in *Nazro v. Merchants' Mut. Ins. Co.*, 14 Wis., 295. In that case it was held that "legislative enactments are not, any more than any other writings, to be defeated on account of mistakes, errors, or omissions, provided the inten-

tion of the legislature can be collected from the whole stat-
ute." That case was followed in *Att'y General v. Railroad
Companies*, 35 Wis., 556–7, where it was held, in effect, that
the court could look into the laws of the state to solve the ques-
tion of the identity of a corporation, especially where the dif-
ferent acts are *in pari materia*. As we do not think that the
mere omission of the word "Wisconsin" in the appropriat-
ing clause of ch. 294 should defeat the "*Wisconsin State
Agricultural Society*" from drawing the money thereby ap-
propriated, so we do not think that the omission of the word
"Wisconsin," and substituting "society" for "Association,"
in the proviso, should render that nugatory, when it is obvi-
ous, from the legislation of the state, that the "Northern
Wisconsin Agricultural and Mechanical Association" was the
corporation therein referred to.

Construing ch. 294, Laws of 1882, in the light of the other
legislation referred to, it, in effect, appropriated the money
therein named to the *Wisconsin State Agricultural Society*,
provided their next annual exhibition should not be held at
the same time of the next annual exhibition of the "North-
ern Wisconsin Agricultural and Mechanical Association." It
therefore stands admitted by the relation that those two so-
cieties or associations did hold their respective fairs at the
same time. It will hardly be insisted upon that the mere fact
that the latter began a day later and quit a day earlier than
the former can be said to be a holding at different times.

This brings us to the effect of the proviso. We do not
think we would be justified in considering the proviso as
separate and independent of the granting or appropriating
clause, as urged by counsel, for the legislature enacted them
together in the same section separated only by a semicolon,
and made the one clearly dependent upon the other. As
already indicated, the manifest purpose of the legislature was
to induce the officers of the respective societies to hold their
respective fairs — the one at Fond du Lac and the other at

Oshkosh — at different periods, so that the one would not interfere with nor be a rival of the other, and hence the appropriations in the two acts set forth were each made on condition that said fairs should be so held at different periods. The two acts must necessarily be construed together, since the proviso or condition in each was such that both societies were obliged to comply, or neither could. Whether they both complied, or failed to comply, was simply a matter of choice with the officers of the. respective societies. Both having purposely chosen not to comply, neither can longer claim the right to the money on the ground that compliance was beyond its sole control.

For these reasons the motion to quash is granted, and the rule to show cause is discharged. Nothing was said upon the argument, nor in the briefs, in relation to the practice in such cases, and the view which we have taken of the motion renders it unnecessary to say anything more than to refer to *Schend v. St. George's German Aid Society,* 49 Wis., 237, where the rule is settled.

*By the Court.*— Ordered accordingly.