STATE OF MONTANA, EX REL. E. C. KNIGHT, RESPONDENT, *v.* ALFRED CAVE, AS TREASURER OF MISSOULA COUNTY, APPELLANT.

[Submitted February 3, 1898. Decided February 14, 1898.]

*Special School Fund—Teacher's Salary—Statutory Construction.*

1. SPECIAL SCHOOL FUND—*Teacher's Salary.*—Moneys which are raised by a tax levied under Section 1940 b. Laws of 1897, page 134, for the purpose of furnishing additional school facilities, may be used to pay the salary of teachers.

2. STATUTORY CONSTRUCTION.—The rule of interpretation that general words are to be restricted by particular terms used in connection with them, is subject to the further rule that the intent of the legislature is to be ascertained from the words of the statute and should be enforced.

*Appeal from District Court, Missoula County.    Frank H. Woody, Judge.*

ACTION by the State of Montana, on the relation of E. C. Knight, against Alfred Cave, as treasurer of Missoula county, for *mandamus* to compel the payment of a school warrant.    An alternative writ was issued, to which defendant demurred, and the court, overruling the demurrer, rendered judgment awarding a peremptory writ, from which defendant appeals.    Affirmed.

Statement of the case by the justice delivering the opinion.

The relator taught in the public schools of District No. 1, of Missoula county, for the month ending December 3, 1897, for an agreed salary of $70.    On that day she received a warrant issued by the trustees for the amount of her salary, directed to the treasurer of Missoula county, and payable out of moneys in the treasury to the credit of the special fund of District No. 1.    The treasurer refused to pay the warrant, upon the ground that it was illegally drawn on the special fund.    Relator thereupon applied to the District Court for a writ of *mandamus* directing the treasurer to pay the warrant out of moneys in the special fund.    The affidavit upon which the application was made disclosed that a special election was duly held in said district on September 7, 1897, for the purpose of raising $8,100, to be used in furnishing additional school facilities.    The election was held under the provisions of Section 1940b, Laws 1897, page 134.    The question submitted was:  "Shall a tax, not to exceed three mills, be raised to furnish additional school facilities for School District No. 1, Missoula county, Montana?"    The tax was duly voted, and, upon its collection, placed to the credit of the district.    On December 3, 1897, there was no money in the treasury be-

longing to said district, except that derived from the tax mentioned. It was further stated in the affidavit that the trustees intended the tax for the purpose of paying the general expenses of the district, and to the end that the schools thereof might continue during the full school year; that, without the money derived from the special tax, the trustees would not be able to employ more than nine teachers to instruct over 700 pupils in daily attendance on the public schools of the district; that there are not sufficient rooms to accommodate the pupils; and that, without the money so derived, the schools of the district could not be continued during the full school year, for lack of money sufficient to pay the salaries of teachers.

The District Court issued an alternative writ, and the treasurer showed cause by interposing a demurrer for insufficiency. The demurrer was overruled, and the District Court rendered judgment awarding a peremptory writ of *mandamus* requiring the treasurer to pay the warrant out of any moneys to the credit of the district. The treasurer appeals from the judgment.

*A. L. Duncan* and *C. B. Nolan*, Attorney General, for Appellant.

*Bickford, Stiff & Hershey*, for Respondent.

PIGOTT, J.—Appellant concedes that the tax was duly levied and collected for the purpose specified in the ballot, and that the purpose was sufficiently expressed. The only question submitted by this appeal is whether money raised by a tax levied under the provisions of Section 1940b, page 134, Laws 1897, for the purpose of furnishing additional school facilities, may be used to pay salaries of teachers. The answer to the question depends upon the scope of the expression "additional school facilities," as employed in the section. Unless these words are sufficiently broad to comprehend teachers, it is clear that the money so raised cannot lawfully be applied to the payment of salaries of teachers.

Following is so much of Section 1940b as is pertinent: "The board of trustees of any district may at any time when in their judgment it is advisable submit to the qualified electors of the district the question whether a tax not to exceed ten mills on each dollar on the taxable property in the district shall be raised to purchase lots and to furnish additional school facilities for said district, or for building one or more school houses, or for removing or building additions to one already built, for the purchase of globes, maps, charts, books of reference and other appliances or apparatus for teaching or for any or all of these purposes. * * * The notice (of election) shall contain the time and place of holding the election, the amount of moneys proposed to be raised and the purpose or purposes for which it is intended to be used. At such elections the ballot shall be in form as follows: 'Shall a tax not to exceed —— mills be raised to furnish additional school facilities for said district (or for building a school house or for improving a school house, or for building additions to one already built, as the case may be.)' "

Are teachers "school facilities?" Is employing teachers furnishing "school facilities," within the meaning intended by by the legislature to be attached to these words? As an aid to the proper construction of the section, counsel for appellant urges the consideration of certain constitutional provisions and of some former legislation upon the subject.

Sections 2 to 6, inclusive, of Article 11, of the Constitution of Montana, make provision for the public school fund of the state, and the sources from which that fund shall be derived. Section 3 declares that the fund shall forever remain inviolate. Section 5 provides that the interest on all invested school funds, and all rents accruing from the leasing of any school lands, shall be apportioned to the several school districts of the state in proportion to the number of children and youths between the ages of 6 and 21 years residing therein, respectively; and Section 6 imposes upon the Legislative Assembly the duty of providing, by taxation or otherwise, sufficient means, in connection with the amount received from the gen-

eral school fund, to maintain a public, free, common school
for each organized district in the state for at least three months
each year.

Section 1905, Fifth Division of the Compiled Statutes of
1887, was, with a few changes not material to the case at bar,
attempted to be carried into the Political Code, where it appears
as Section 1940. In the translation it suffered loss of the
words "the board of trustees of any district may." The au-
thority to raise a special tax "to furnish additional school fa-
cilities" and "to maintain any school or schools" was con-
tinued by Section 1940. The act of March 8, 1897, amended
Section 1940 by eliminating all reference to a special tax, and
confined itself to providing for the sources of the state school
fund, and added Sections 1940a, *infra*, and 1940b, *supra*, the
latter of which took the place of that portion of Political Code,
Section 1940, providing for a special tax, but it omitted the
words "or to maintain any school or schools of such dis-
trict."

Section 1940a is as follows: "In addition to the provisions
for the support of the common schools hereinbefore provided,
it shall be the duty of the county commissioners of each
county in the state to levy an annual tax, which levy shall be
made at the time and in the manner provided by law for the
levying of taxes for county purposes, and said levy shall not
be less than three mills on the dollar, and not more than five
mills on a dollar of the assessed value of all taxable property,
real and personal, within the county, which tax shall be col-
lected by the County Treasurer at the same time and in the
same manner as state and county taxes are collected. For the
further support of common schools there shall also be set
apart by the County Treasurer all moneys paid into the county
treasury arising from all fines for violations of law, unless
otherwise specified by law. Such moneys shall be forthwith
paid into the county treasury by the officer receiving the same,
and be added to the yearly school fund raised by tax in each
county, and divided in the same manner." Immediately fol-
lowing is Section 1940b.

To put in force the constitutional provision contained in Section 5 of Article 11, *supra*, and to provide the instruments for dividing the funds required to be raised by the terms of Section 1940a, the superintendent of public instruction is required by Section 1714 to apportion the state school fund among the counties of the state in proportion to the number of children of school age in each county; and by Sections 1737 and 1942 the County Superintendent of Schools is required to apportion all school moneys to the several districts of his county in proportion to the number of school census children at such times as may be deemed necessary for the convenience of the school officers; and the trustees are authorized, when there is money to the credit of the district, to draw warrants on the County Treasurer, the warrants to show the purpose for which the money is required.

It is argued by the Attorney General that the omission of the words "to maintain any school or schools" from Section 1940b is strongly suggestive of a legislative intent, when viewed in the light of the provisions made to meet the expenses of maintaining the public schools of the state. He insists that money raised by special taxation to provide additional school facilities cannot be used for the maintenance of schools, because the legislature has expressly provided for such maintenance by the tax required to be levied under the provisions of Section 1940a; and he argues that it was the intention of the legislature that, with the other funds available for the maintenance of the schools, this tax, within the limits prescribed would be ample to meet all exigencies.

We do not think that, by the omission from Section 1940b of the words "to maintain any school or schools," the legislature intended to go to the length claimed by the learned counsel. It seems to us that the words "additional school facilities" embrace some at least of the means necessary to "support" or "maintain" schools. It is not to be inferred, however, from anything said in this opinion, that the purchase of lots, or building of school houses, or the removing thereof, or building additions thereto, is included within the meaning of

"additional school facilities," for the statute expressly distinguishes each of these purposes from the other and from such "school facilities." The law, aside from Section 1940b, makes general provision for the support and maintenance of schools, and this includes the employment and payment of teachers. Section 1940b permits any district to levy a special tax with which to furnish additional school facilities. It may, and doubtless often does, happen that the money apportioned to a district and placed to the credit of its general fund is, by reason of some extraordinary or unexpected outlay, insufficient to meet the needs of the school for current expenses. Without the authority conferred by Section 1940b, there would be no means at hand for the reasonably expeditious liquidation thereof. We think "additional school facilities" mean facilities in addition to or beyond those already possessed by the district, and that the purpose provided for in Section 1940a is not wholly exclusive of the purposes specified in Section 1940b, which employs a broad and comprehensive expression, including, as has been said, some, at least, of the means whereby the schools may be maintained. The first sentence of the section is awkwardly constructed, and its meaning is doubtful. The legislature, however, must be presumed to have used the words quoted with deliberation and to accomplish a purpose. Charts, maps, books of reference, and other appliances for teaching are plainly school facilities; and the purchase of these conveniences or facilities is expressly declared as one of the several purposes for which the tax may be voted. Unquestionably, the phrase "school facilities" includes the apparatus and appliances for teaching; and it is difficult to conceive why the general term was employed, and then, after other purposes had been expressed, certain things falling within its signification were named, except upon the theory that the legislature inserted the latter *ex industria.* It presents an example of the careless legislation which is common, and which the courts are continually called upon to interpret or construe. The words "additional school facilities," used in the same section, to furnish which, as a formally dis-

tinct purpose, a special tax may be raised, certainly embrace more than apparatus or appliances for teaching.   The contention of the Attorney General would, if adopted, eliminate from the statute the words "additional school facilities," and compel us to hold that the legislature had no intention whatever. This we may not do, for, in construing a statute, effect must, if possible, be given to all its language.   (*Hedges* v. *Commissioners*, 4 Mont. 280, 1 Pac. 748.)

Appellant admits all the issuable facts pleaded in the application, which states, among other things,. that more rooms were needed for the accommodation of the pupils and a greater number of teachers, and, inferentially, that the tax was levied for the purpose of providing funds to procure additional rooms, and to pay teachers, the general fund not being sufficient for the purposes.   It is admitted that the tax was levied and collected to furnish "additional school facilities."   To provide, when reasonably necessary or convenient, more school rooms, is to furnish additional school facilities.   "Facility" is not a technical word, but one in common use, and its meaning is to be found in the sense attached to it by approved usage. (Section 15 of the Political Code; *State* v. *Johnson*, 20 Mont. 367, 51 Pac. 820.)   Roget's Thesaurus gives "aid," "assistance," and "help" as equivalents of "facility."   Webster, among other definitions of the word, includes "the quality of being easily performed; ease in performance; that which promotes the ease of any action; advantage; valuable aid; assistance." The Century Dictionary follows the definitions of Webster, and adds "the means by which the performance of anything is rendered more easy; convenience."   That which aids, assists or makes more easy the acquisition of knowledge is a convenience and an advantage, and is clearly a "facility."   Books, maps, globes and charts are facilities to the imparting of knowledge.   Through them or by means of them information is conveyed to the pupil.   But the meaning of the word is not limited to inanimate bodies or things.   Men are often facilities.   Without a crew to man his vessel, the master of a ship would not have the necessary facilities.   A school with a

complement of pupils in every room, but lacking teachers, would certainly not have the facilities to carry on educational work. The question so frequently put, as to whether the school facilities of a certain city or town are good, is an inquiry which at once suggests the teachers, their sufficiency in number and their ability to impart knowledge. Parents often remove their families to a place with good school or educational facilities, the chief reason actuating them being the quality of the teachers, and not the mere inanimate advantages. Can it be fairly claimed that a district equipped with all necessities and conveniences in respect of buildings and appliances and apparatus for teaching, but lacking adequate instructors, has sufficient school facilities? The labor performed by the teacher is assistance and valuable aid. It renders the acquisition of knowledge by the pupils more easy, and is a facility. Teachers are means of imparting knowledge to pupils, and are therefore educational facilities. We are inclined to the opinion that the legislature intended to include teachers and their services within the meaning of the phrase "additional school facilities."

Appellant asks us to apply to Section 1940b the rule that general words, followed by an enumeration of particular cases, include only cases of the same kind and description; in other words, that the general term "additional school facilities" is restrained and limited to "globes, maps, charts, books of reference and other appliances and apparatus for teaching." But the section does not present a case for the application of this canon of statutory construction. The general phrase with reference to furnishing school facilities was intended to signify something beyond and in addition to the appliances and apparatus afterwards mentioned, and is a purpose as formally distinct in language and respective position from them as is the building of a school house, authority for which follows immediately after the general provision with respect to facilities. The general expression as to facilities, and the particular words referring to facilities of a certain kind, are not coupled together. If this general provision just mentioned be ignored

or be held applicable only to apparatus for teaching, the phrase no longer has force or meaning.

The intent of the legislature is to be discovered in the ordinary meaning of the words of the statute; and the rule governing the construction of the one before us is well stated in Section 63, page 143, Black on Interpretation of Laws, which reads as follows:

"But the rule of construction that general and unlimited terms are restrained and limited by particular recitals when used in connection with them does not require the rejection of general terms entirely, and it is to be taken in connection with other rules of construction, not less important, such as that an act should be so construed as to carry out the declared intention of the legislature."

The case of *School District* v. *Perkins*, 21 Kan. 389, does not conflict with the views here expressed. It was held in that case that a statute requiring trustees to provide "necessary appendages" for a school house did not authorize the purchase by them of a stereoscope and stereoscopic views, which were mere apparatus, and not appendages.

In our opinion the judgment of the District Court in this case was right, and should be affirmed; and it is so ordered.

*Affirmed.*

PEMBERTON, C. J., concurs.    HUNT, J., not sitting.