THE HON. WILLIAM H. HUNT,
THE HON. WILLIAM T. PIGOTT, } Associate Justices.

---

HILBURN, COUNTY TREASURER, RESPONDENT, *v.* ST. PAUL, M. & M. RAILWAY CO. ET AL., APPELLANTS.

| 23 | 229 |
| f24 | 228 |
| 23 | 229 |
| f25 | 161 |

[No. 1,360.]

[Submitted June 28, 1899. Decided October 9, 1899.]

*Taxation—School Taxes—Submission to Voters—Statutes—Conflicting Provisions—Statutory Construction—Interpretation.*

1. Courts will sustain the acts of the legislature in every case in which it is possible to do so under the recognized rules of interpretation. It is only where, after an act of the legislature has been subjected to the test of all the standards of interpretation,

the intention cannot be discerned, or the means of carrying it out are not provided or are inadequate, or it is so conflicting and inconsistent in its provisions that it cannot be executed, that it will be declared inoperative and void.

2. Political Code, Section 1940, as amended by Act of March 8, 1897, and numbered as Section 1940 b, providing for the submission to the voters of the district of the question whether school taxes, not to exceed 10 mills on the dollar, should be levied, which requires a notice stating the amount to be raised, but which does not provide for a determination of such amount, before the submission of the question, and which provides, in mandatory terms, for a form by ballot in which the rate, but not the amount, is to be inserted, is inoperative and void, since it contains conflicting provisions, with no means of carrying either into execution.

3. Under Political Code, Section 5162, providing that, if the provisions of any title therein conflict with the provisions of any other title, the provisions of each title must prevail as to all matters and questions arising out of the subject-matter of such title, Section 1940, as amended by Act of March 8, 1897, and numbered as Section 1940b, contained in Title III, relating exclusively to "Education," which provides for the levy of school taxes on a different basis of taxation than that provided for other taxes in Sections 3670-4083, in Title X, relating to "Revenue," but which contains no provision for the collection of the tax, or by which the roll on which such tax is computed can get upon the regular assessment roll of the county, provided for in Title X, is inoperative and void.

### ON MOTION FOR REHEARING.

[Decided October 30, 1899.]

1. The rule, in construing statutes, that, where it is manifest on the face of the act that an error has been made in the use of the words, the court may correct it, and read the statute as corrected, to give it the obvious intent of the legislature, does not justify the court in reading such a change into a statute as that the effect will be to abrogate a specific provision made therein.

2. It is the rule in regard to special taxes, that the various steps provided by law to be taken in laying them must be observed; and the record of the proceedings must show that the provisions of the law have been complied with.

3. The rules of construction: "That the contemporaneous and long-continued practice of officers required to execute or take special cognizance of a statute is strong evidence of its true meaning," and that, "if the legislature, by its inaction, has long sanctioned a certain construction, language apparently unambiguous may be given by the court such construction, especially if the usage has been public and authoritative," are only applicable in a condition of things where vested rights have been acquired, and where for many years the construction insisted upon has been the rule of action; and to disturb it would be to work great public and private injury and inconvenience. They are inapplicable in a case where the practice has not become inveterate, and the terms of the statute are both ambiguous and conflicting with each other and with other provisions of law which they cannot be held to amend or repeal.

*Appeal from District Court, Flathead County; D. F. Smith, Judge.*

ACTION by Samuel Hilburn, as county treasurer of Flathead county, Mont., against the St. Paul, Minneapolis & Manitoba Railway Company and Great Northern Railway Company. There was a judgment for plaintiff, and defendants appealed. Reversed.

### STATEMENT OF THE CASE.

Action by the plaintiff, as county treasurer of Flathead

county, to foreclose a lien claimed on account of special taxes levied in school districts Nos. 6, 17, 19, 21, 23, 26, and 15, in Flathead county, for the year 1897. The complaint sets forth seven separate causes of action. In the first cause of action, after setting forth the official character of the plaintiff and the corporate character of the defendants, it proceeds to allege substantially as follows: That on the first Monday of March, 1897, and during all that day, the defendant the St. Paul, Minneapolis & Manitoba Railway Company was the owner of 197.5 miles of roadbed, roadway, rails, and certain rolling stock, the assessed valuation of which was fixed for the year 1897 by the state board of equalization of the state of Montana, at the time and in the manner provided by law, at $4,600.00 per mile; that on the second Monday of September, 1897, the board of commissioners of Flathead county caused to be entered in the proceedings of said board an order stating and declaring the number of miles of said railroad in school district No. 6 of said county to be 62.65 miles, at the assessed value aforesaid of $4,600.00 per mile; that the defendant the Great Northern Railway Company, on the first Monday of March, 1897, and during all that day, was the lessee of the above-described property belonging to its codefendant railway company, and during all of said day was in control of said line of railway and rolling stock, and operating the same; that at the same time it, the Great Northern Railway Company, was the owner of certain depots, section houses, water tanks, tool houses, and other property located in said Flathead county upon the right of way of its said codefendant, and upon the line of the Great Northern Railway, a particular description of which is shown by the return of said Great Northern Railway Company for the year 1897 to the county assessor of said county, and attached to and made a part of the complaint as Exhibit A.; that at all times mentioned herein school district No. 6 of Flathead county was, and is now, a duly and regularly created and organized school district of said county, with a board of trustees consisting of three members; that at a regularly called special meeting of

the board of trustees of said district, held at the school house therein, on the 15th day of March, 1897, certain proceedings were had by the said board, as shown by its records, as follows: "The board voted to submit to the qualified voters of this district the levy of a special tax of $2,000.00 to maintain schools, to be voted on at the next school election, April 3, 1897"; that at said meeting the purpose for which said money was to be used, if voted, was discussed by the said board, and that said money was to be raised for the purpose of paying salaries of teachers of the schools of said school district, and for furnishing other additional school facilities; that the trustees at said meeting understood and intended the words "to maintain schools" to cover and include, and said words did cover and include, the purpose of raising money to pay the salaries of teachers and furnish other school facilities; and that, in pursuance of said action of the board of trustees to submit the question aforesaid to an election of the qualified voters of said district, such election was called by posting notices in three public places in said district for a period of time more than 15 days before the day of election, a copy of which notice is as follows:

"NOTICE OF ELECTION.

"The annual meeting of school district No. 6, Flathead county, for the purpose of electing one trustee, and submitting to the qualified electors of the district the question whether a tax of $2,000.00 (dollars) shall be raised for maintaining school in said district, will be held on Saturday, April 3, 1897, at the district school house. The polls will be open between the hours of 2 and 6 P. M.

"C. H. SELVAGE,
"C. S. GARRETT,
"JOHN HALL,
"Trustees.

"C. F. SULLY, Clerk District No. 6.
"Dated March 15, 1897."

It is further alleged that the words "for maintaining school" in said notice were understood and intended by said

board of trustees to cover and include, and the said words did cover and include, the purpose of raising money to pay the salaries of teachers and furnish other school facilities; that the said election was held at the district school house in said district on the 3d day of April, 1897, and that at said election 117 legal votes were cast for "Tax, Yes," and 4 votes for "Tax, No"; that the officers of said election thereupon certified to J. B. Gibson, the assessor of Flathead county, the fact that a majority of the votes cast at said election were for "Tax, Yes"; that said J. B. Gibson, as assessor, thereupon copied from the last assessment roll of said county the list of property liable to taxation situated in or owned by residents of said school district, and delivered the same to the board of trustees of said school district; that said list included the taxable property of said defendants in said district situated therein on the first Monday of March, 1897, viz:   As belonging to the St. Paul, Minneapolis and Manitoba Railway Company, Great Northern Railway Company, lessee: franchise, roadbed, rails, and rolling stock, 62.65 miles, assessed at $4,600.00 per mile, making a total valuation of $288,190.00; as belonging to the Great Northern Railway Company: buildings, turntables, water tanks, tool houses and coal docks at Summit, Bear Creek, Java, Essex, Paolo, Nyack, Belton, Coram, and Columbia Falls stations, assessed for the year 1897 at a valuation of $12,675.00; and that the total valuation of the taxable property of said defendants in said school district for the year 1897 was $300,865.00; that the board of trustees of said school district, upon receiving the assessment roll aforesaid from the county assessor, gave five days' notice thereof. by posting a notice in three public places in said district, and sat for one day as a board of equalization at the school house in said district on the 16th day of August, 1897, for the purpose of equalizing the property in said district; that the said board of trustees, upon receiving from the assessor the said list of property, deducted 10 per centum therefrom for anticipated delinquencies, and devided the $2,000.00, the sum voted as stated in said notice of election, by the amount stated

in said list, less the 10 per centum deducted, and from such division ascertained that the rate per centum required was six mills on each dollar of the taxable property in said district; that the special school levy in said district for the year 1897 was then and there fixed at six mills on each dollar of the taxable property; that, as soon as they had ascertained the rate of taxation to be six mills on each dollar as aforesaid, the board certified the same to Michel Therriault, the county clerk of said Flathead county, who extended the same on the general assessment roll of said county for the year 1897, and certified the same to Samuel Hilburn, the plaintiff herein, as treasurer, for collection; that the amount of taxes so extended for the year 1897 against the property of the defendant the St. Paul, Minneapolis & Manitoba Railway Company, the Great Northern Railway Company, lessee, was $1,729.14, and the amount of taxes so extended against the property of the defendant Great Northern Railway Company was $76.05; that said special taxes for the year 1897 were not paid, but became delinquent; that thereupon the plaintiff, as county treasurer, published in the delinquent list, as required by law and in the manner provided, the names of the said defendants, and a description of the property owned and controlled by them in said school district No 6, together with a notice that, unless the taxes delinquent, with the costs and percentages, should be paid, the real property on which said taxes were a lien would be sold at public auction in front of the county treasurer's office on the 17th day of January, 1898; that the cost of said publication was one dollar; that thereafter, on Janury 10, 1898, the defendants, by their attorney and agent, A. J. Shores, filed a written protest with the treasurer, protesting against such sale, claiming that the assessment of said special school taxes was void, and specifying the grounds upon which said claim was founded; that thereupon the said county treasurer withdrew the said property from sale, and reported the case to the board of commissioners of said county, for its direction in the premises; that thereafter, and before the commencement of this suit, the said board of

commissioners directed the foreclosure of the lien of said tax by action; that no part of said taxes levied as aforesaid, amounting to $1,805.19, has been paid, and the same are now due and owing, together with 10 per centum penalty upon the said sum added for the nonpayment thereof, and 12 per centum interest thereon from the first Monday of December, 1897, with costs of collection, including one dollar for advertising and 10 per centum for attorney's fees.

The allegations set forth in the other causes of action are substantially the same as in the first cause of action. They are therefore omitted from this statement.

Judgment is demanded by plaintiff for the amounts alleged to be due and delinquent on account of the levies in the various districts, with penalties, interest and costs, including attorney's fees, and a foreclosure of the lien under the statute upon the property mentioned in the complaint. Defendants interposed a general demurrer to each cause of action. After argument, the trial court sustained the demurrer to the sixth and seventh causes of action, and overruled it as to the others. The defendants declined to plead further, judgment was thereupon rendered against them personally upon the first, second, third, fourth and fifth causes of action, and execution awarded thereon against their joint property, no provision being made for the sale of any specific property to satisfy the lien. From this judgment defendants have prosecuted their appeal to this court.

*Mr. A. J. Shores*, for Appellants.

*Mr. C. B. Nolan, Attorney General*, for Respondent.

**MR. CHIEF JUSTICE BRANTLY**, after stating the case, delivered the opinion of the court.

The contention is made by appellants that the statute under which the elections were held in the various districts is not capable of being executed, and that, therefore, no valid assessment can be made thereunder. If this contention is sus-

tained, the result will be, not only that the taxes involved herein will be declared invalid, but also that no school district in the state can hereafter vote any special tax, in aid of its own schools, until new legislation be enacted granting the power and providing a method by which it may be done; for the statute in question contains the only provision we have on the subject.    The parts of it pertinent to this inquiry are Section 1940 of the Political Code, as amended by an act of the legislative assembly approved March 8, 1897, and numbered as Section 1940b (Session Laws of 1897, page 134), and Section 1941, which follow:

''The board of trustees of any district may at any time when in their judgment it is advisable submit to the qualified electors of the district the question whether a tax not to exceed ten mills on each dollar on the taxable property in the district shall be raised to purchase lots and to furnish additional school facilities for said district or for building one or more school houses, or for removing or building additions to one already built, for the purchase of globes, maps, charts, books of reference and other appliances or apparatus for teaching, or for any or all of these purposes.    Such election shall be called by posting notices in three public places in the district for at least fifteen days before the election and by publishing for at least one time in some newspaper published in the county in which the said district is located a notice of such election, provided that this shall apply only to districts containing a school board of more than three trustees and conducted as nearly as practicable according to the provisions herein made for holding annual school elections.    The notice shall contain the time and place of holding the election, the amount of moneys proposed to be raised and the purpose or purposes for which it is intended to be used.    At such elections the ballot shall be in form as follows:    'Shall a tax not to exceed —— mills be raised to furnish additional school facilities for said district or for building a school house or for improving a school house or for building additions to one already built, as the case may be.

" 'Tax, Yes.

" 'Tax, No.'

"The elector shall prepare his ballot by crossing out thereon parts of the ballot in such a manner that the remaining part shall express his vote upon the questions submitted.   If a majority of the votes cast are 'Tax, Yes,' the officers of the election shall certify the fact to the assessor of the county, who shall at once proceed to copy from the last assessment roll of the county assessor the list of property liable to taxation, situated in or owned by residents of his district, and shall deliver the same to the board of trustees, who shall allow him therefor out of the proceeds of said tax two dollars per day.   The trustees shall upon receiving the roll, deduct ten per centum therefrom for anticipated delinquencies, and then by dividing the sum voted, together with the estimated cost of assessing and collecting added thereto, by the remainder of the roll, ascertain the rate per centum required and the rate so ascertained (using the full cent on each one hundred dollars in the place of any fraction) shall be and is hereby levied and assessed to, on or against the persons or property named or described in said roll; and it shall be a lien on all such property until the tax is paid and said tax if not paid within the time limited within the next section for its payment shall be recovered by suit in the same manner and with the same costs as delinquent state and county taxes.   The trustees upon receiving any assessment roll from the assessor shall give five days' notice thereof by posting a notice in three public places in the district and shall sit for at least one day as a board of equalization at such time and place as shall have been named in said posted notices; and they shall have the same power as county boards of equalization to make any change in said assessment roll."   (Section 1940 b.)

"As soon as the rate of taxation has been determined, as provided in the last preceding section, the trustees shall certify the same to the county clerk, who shall extend the same upon the general assessment roll of the county, and certify the same to the county treasurer, who shall proceed to collect

the tax in the same manner and at the same time, and with
the same power and authority to enforce the payment of the
same, as in the case of the county and state taxes. The coun-
ty treasurer shall place any tax so collected to the credit of
the district to which it belongs.'' (Section 1941.)

The act of which section 1940b is a part was passed during
the closing days of the session of the legislature, and, as Jus-
tice Pigott well says of it in *State ex rel. Knight* v. *Cave*, 20
Mont. 468, 52 Pac. 200, ''presents an example of the care-
less legislation which is common, and which the courts are
continually called upon to interpret or construe.'' It is nev-
ertheless an expression of the legislative will on the subject
under consideration, and must be executed, if its intention
can be discerned and it is possible to carry it out as directed.
It is fundamental that the courts will sustain the acts of the
legislature in every case in which it is possible to do so under
the recognized rules of interpretation. It is only where,
after the measure in question has been subjected to the test
of all the standards of interpretation, the intention cannot be
discerned, or the means of carrying it out are not provided,
or are inadequate, that it will be declared inoperative and
void. A brief review of the history of the sections under
consideration will be helpful. Section 1940b was brought
forward from the Compiled Statutes of 1887 (Fifth Division,
Section 1905) as part of an act approved March 11, 1895,
and adopted as a part of the Political Code of 1895. It ap-
pears in that Code as the latter part of section 1940. In
course of the transfer into the Code, a change was made in
the requirement as to the form of question to be sub-
mitted to the voters by the trustees. Under the older
statute, the trustees were required to determine the
amount of money desired, and after notice, the same in form
as that required by section 1940b, the voter indicated his
desire by voting ''Yes'' or ''No'' as to this amount.
In case of a favorable vote, the method of determining
the rate was the same as is now provided. In sec-
tion 1940, *supra*, the question to be submitted to the voter is

whether a tax not to exceed ten mills upon each dollar of taxable property in the district shall be raised. The form of the ballot is prescribed, and is, "Shall a tax not to exceed —— mills be raised, etc.," the purposes named in both acts being the same, except that the additional purpose "to purchase lots" is inserted in the new section. The work of obtaining the assessment roll under the old act was done by the district clerk. Under the act of 1895 this is enjoined upon the county assessor. By an oversight in the drafting of the act of 1895, the words, "the board of trustees of any district," were omitted, and this defect appeared in the act as it was approved; so that, there being no subject for the following verb "submit," no person was expressly authorized to submit the question to the voters. This section was therefore thought to be inoperative, and to cure this defect, it was amended by the act of 1897. There was then added section 1940a, which contains provisions for the raising of funds for ordinary school purposes. Section 1940b is the same as the latter part of section 1940, except that the words, "the board of trustees of any district," were inserted, and the words, "or to maintain any school or schools in such district," were omitted from the enumeration of purposes for which a special tax could be voted. From this brief statement it can be readily seen that, under the provisions of the section under consideration, as it stood in the Compiled Statutes, no limit was fixed beyond which the trustees could not go in determining the amount of money needed or to restrain the voters in giving their consent. In the transfer of the provision to the Code of 1895, an attempt was made to impose a limit in both these particulars. The intention to do this is manifested by the form of resolution to be determined upon by the board in its deliberations, and also by the form of ballot required. The notice required by the old provision remains the same in the new, but it is not in conformity with the theory of the provisions just mentioned. It does conform, however, to the theory of the old statute, which makes the rate as found thereunder mandatory. The rate, under the theory of the other

provisions of the new act, was evidently designed to be fixed by the board upon considering the matter further at a time subsequent to the date of the election; for these provisions cannot be construed to contemplate any other method of fixing the rate. In any event, they are inconsistent with the provision for fixing the rate as it now stands, because they do not furnish any dividend into which the sum or amount of the taxable property in the district may be caused to enter in order to find the quotient rate. No amount is voted which can be used as such dividend. The vote must be upon the limit. If it be said that the terms "amount" and "rate" refer to the same thing, and that the board in the resolution adopted should fix the amount as well as the rate, and insert the rate also in the notice, a conclusive answer is that the words have totally different significations. The former means "a sum or total,—the aggregate"; while the latter means "a fixed measure of estimation." These are clearly the significations given to these terms as used in the statute. Putting the rate limit in the notice would not avoid the difficulty, because the voter would still not vote upon the amount. The amount could not be inserted in the ballot, because that would not be permissible, the statute using mandatory terms in providing for the form of this. We therefore have in this section of the statute, the manifest intention of which is to authorize school districts to levy special taxes for school purposes, two conflicting theories, with no means provided sufficient or adequate to carry either into execution. We are therefore constrained to the conclusion that it is inoperative and void. As stated in the foregoing part of this opinion, we are mindful of the rule that the courts must endeavor to so interpret a statute that it will stand. We are also mindful of another requirement, none the less binding upon us, that we cannot usurp the power appertaining to the legislature, a co-ordinate branch of the government, and legislate, where it has not done so. As the court well said in *State* v. *Partlow*, 91 N. C. 550: "A statute must be capable of construction and interpretation; otherwise, it will be inoperative and void. The court must

use every authorized means to ascertain and give it an intelligible meaning; but if, after such effort, it is found to be impossible to solve the doubt and dispel the obscurity, if no judicial certainty can be settled upon as to the meaning, the court is not at liberty to supply—to make—one. The court may not allow conjectural interpretation to usurp the place of judicial exposition. There must be a competent and efficient expression of the legislative will."

So, if an act of the legislature is so vague and uncertain in its terms as to convey no meaning; or if the means for carrying out its provisions are not adequate or effective; or if it is so conflicting and inconsistent in its provisions that it cannot be executed, it is incumbent upon the courts to declare it void and inoperative. (*State* v. *Partlow, supra;* Chaffee's Appeal, 56 Mich. 244, 22 N. W. 871; *Ward* v. *Ward,* 37 Tex. 389; *Drake* v. *Drake* (4 Devereaux's Law), 15 N. C. 110; Hughes' Case, 1 Bland 46; *In re Hendricks* (Kan. Sup.), 57 Pac. 965; *Farmers' Bank* v. *Hale et al.*, 59 N. Y. 53; *Pillow* v. *Gaines,* 3 Lea 466; Suth. St. Const. Sec. 220.)

There is still another cogent reason why Section 1940b is inoperative. The evident meaning of Section 1941 is that, after the rate has been fixed as provided in 1940b, not only the rate, but also the roll, prepared and equalized by the trustees, must be certified to the county clerk for extension upon the general tax roll of the county for collection by the treasurer. The word "same," as used in the latter section, evidently refers to the equalized roll as well as to the rate; otherwise, the work of the board, sitting for the purposes of equalization, would be nugatory, and, the rate only being certified, the basis of taxation to which the rate would be applied would be different from that upon which it was computed. We cannot suppose that the legislature intended that the rate should be computed upon one valuation, and the tax collected upon another. And yet this would be the case if the rate only were to be certified, for the mandate of Section 1940b, *supra*, is that the last assessment roll must be used; that is, presumably, the one of the previous year. That this

was not the intention of the legislature is made clear by refer-
ence to the following language in Section 1940b: "And the
rate so ascertained   *   *   *   shall be and is hereby levied
and assessed to, on or against the persons or property named
or described in said roll, and it shall be a lien on all such
property until the tax is paid." The Political Code of 1895,
as reported by the code commission, contained a scheme for
assessment, equalization, levy, and collection of taxes complete
in itself, which was designed to be, and is, available for all
taxing purposes for the state, county, and subdivisions of
counties.    This plan or scheme was adopted with the Code
practically as it was reported, and constitutes Title X, Part
III of the Political Code relating to revenue (Sections 3670–
4083).    The fundamental idea of this scheme or plan is that
there must be one tax roll for all purposes, and that the board
of county commissioners must levy all taxes for the county
and its subdivisions, except incorporated cities and towns
which have ordinances providing for the assessment and col-
lection of their own taxes.    To carry out this idea, the con-
tents of the assessment roll are prescribed, so that the situation
of all property in any subdivision of the county appears
thereon (Section 3724).    When this roll has been completed
for the county, it is equalized by the board of county com-
missioners for the county, and, with the rolls of other counties,
by the state board of equalization.    There is then added the
proportion belonging to each county of the assessment made
by the state board of equalization upon railroads operated in
more than one county, and upon mortgages upon property
situated in two or more counties.    This last item is apportioned
by the commissioners among the subdivisions of the county.
Thus, the roll is completed (Sections 3738–3809), and is the
only basis of taxation for the county, or any subdivision
thereof, with the exception of cities and towns, as noted
(Section 3743).    The levy is then made by the county com-
missioners for all county purposes.    In perfect conformity
with this scheme, the code commissioners, in their draft of
the Code, presented a chapter with provisions for levying and

collecting special taxes for school districts. The method of submitting the question of a special tax to the voters was the same as that provided in the Compiled Statutes (Section 1905, *supra*). After the amount was voted, this was to be certified to the county commissioners before the final levy for the county was to be made. This board was thereupon to determine the rate by summing up the property belonging to the particular district as it appeared upon the roll for the current year, and using this as a divisor for the dividend furnished by the amount certified by the trustees. The rate thus determined was to be thereupon levied by the commissioners, and the tax extended and collected with other taxes of the county. Had these provisions been adopted, there would have been a plain and easy method provided for the levying and collection of these taxes, entirely consistent with the title relating to revenue. These provisions are found in Sections 1245–1253 of the Political Code as reported by the code commission. But, as has been noted already, the report of the commission upon this subject was rejected. The act of 1895, *supra*, and the act of 1897, amendatory of this act, are now among our statutes in their stead. These go to make up the provisions of Title III of Part III of the Political Code (Sections 1510–2028) relating to education. This Code (Section 5162) also provides that, if the provisions of any title therein conflict with the provisions of any other title, the provisions of each title must prevail as to all matters and questions arising out of the subject-matter of such title. Now, the acts of 1895 and 1897 deal exclusively with the matters relating to education. They have no reference to the general scheme of revenue provided for in the title relating to revenue. They do not, in terms, change in any way the machinery devised in this title touching assessment, equalization, levying, and collecting taxes. They do not, in themselves, provide a way by which the basis of taxation contemplated by them can get a place upon the assessment roll of the county, so that the tax authorized by the vote of the district can be collected with the other taxes of the county. They are inconsistent with

the provisions of Title X, in that they provide a different basis of taxation; but they may not on this account be construed as amending or repealing, by implication, any of the provisions of that title. They do not purport to amend any portion of it, and, under the rule of construction laid down in Section 5162, *supra,* the provisions of Title X must be allowed to stand, notwithstanding the inconsistent provisions of these acts; for the same rule must be applied to acts amending the different titles of the Code, when they do not refer to the subject-matter of other titles. The county clerk may not, therefore, change the assessment roll provided for by Section 3743, *supra,* nor is he authorized to keep a separate one for each school district, Title X nowhere so providing, and there being no direction to him to do so in Title III. These acts, therefore, not containing in themselves any provisions under which the special tax can be collected, and there being no means provided under Title X by which the roll upon which they are computed can be placed upon the assessment roll of the county, so that the tax may be collected under that title with the other taxes of the county, the means for carrying out the provisions of these acts do not exist at all. To the extent, therefore, of the provisions contained in the sections quoted *supra,* these acts must be held to be inoperative and void.

Section 1940b was considered by this Court in *State ex rel. Knight* v. *Cave, supra,* but the question presented here was not involved in that case. The only question presented there was upon the meaning of the expression "additional school facilities," used among the enumerated purposes for which a tax might be voted.

The judgment of the district court will therefore be reversed, and the cause remanded, with directions to sustain the demurrer.

*Reversed and remanded.*

MR. JUSTICE HUNT, being absent, took no part in this decision.

## ON MOTION FOR REHEARING.

[Decided October 30, 1899.]

PER CURIAM.—Counsel for plaintiff, in his motion for rehearing herein, while admitting that he has no substantial ground upon which to base the application, insists that the importance of the question involved is alone sufficient to justify a re-examination of the case. At the time the original opinion was handed down, we were fully aware of the importance of the case, and of the probably disastrous consequences of the conclusion reached therein to many of the school districts throughout the state. Yet, when confronted with the necessity of a choice between declaring the sections of the statute in question invalid and assuming the functions of the legislature, there was but one course left to us. We could find no other legitimate solution of the matter. Nor are we now, after a further examination of the statute itself and the authorities cited by counsel, able to announce a different conclusion.

1. It is admitted that under the provisions of Section 1940b, Political Code, touching the submission of the question of a tax to the voters of the district, no sum can be voted. But it is urged that by substituting for the words "the sum voted," in the latter part of the section, in the provision directing the trustees how to determine the rate, the words "the sum mentioned in the notice," one of the difficulties in executing the statute will disappear. In support of this suggestion the rule is invoked that, where it is manifest upon the face of an act that an error has been made in the use of words, the court may correct the error, and read the statute as corrected, in order to give effect to the obvious intent of the legislature. It is not uncommon for the courts, in construing statutes, where it is manifest that error has been committed, to make the correction necessary to give them effect. One word or phrase may be read for another. (*Haney* v. *State*, 34 Ark.

263; *People ex rel. Escott* v. *Hoffman,* 97 Ill. 234; *Moody* v. *Stephenson,* 1 Minn. 401 (Gil. 289); *Burch* v. *Newbury,* 10 N. Y. 374; *Lancaster Co.* v. *Frey,* 128 Pa. St. 593, 18 Atl. 478.) Words, phrases and clauses may be expanded or restricted in their meaning (Suth. St. Const. Secs. 218, 246) so as to carry out the obvious intent of the legislature. The obvious sense in which words are intended to be understood, and not their abstract force, is to be followed. (*Id.*) Words and phrases may be omitted. (*U. S.* v. *Stern,* 5 Blatchf. 512, s. c. 27 Fed. Cases, 1310; *State* v. *Acuff,* 6 Mo. 55; *State* v. *Beasley,* 5 Mo. 91.) An erroneous description may be corrected. (*Lindsley* v. *Williams,* 20 N. J. Eq. 93; *Palms* v. *Shawano Co.,* 61 Wis. 211, 21 N. W. 77; *State ex rel. Agricultural Society* v. *Timme,* 56 Wis. 423, 14 N. W. 604.) Phrases may be transposed in order that the sentence may be read in its obvious sense, and attributive words be applied to the proper object. (*Babcock* v. *Goodrich,* 47 Cal. 488; *Matthews* v. *Commonwealth,* 18 Grat. (Va.) 989.) So the court will adopt any other method to make the law effective, provided the context furnishes the real intent of it, and it is not necessary to add substance to it to make it effective. It may look, also, to statutes in *pari materia.* (Suth. St. Const. Secs. 283–285.) But it must be understood that these rules apply only to cases where the intention is manifest from the context and provisions in *pari materia,* and always with the limitation that, after the correction is made, the means of executing the law are provided for. The court will not add substance where there is no substance, nor will it provide means where the law provided none. And we apprehend that no authority can be found to sustain a court in reading such a change into a statute as that the effect will be to abrogate a specific provision made therein.

We do not think the suggestion made by counsel will avoid the difficulty. The aim of the provision fixing the form of question to be submitted and the ballot to be used is to have the voter authorize the tax, and at the same time to impose a limit upon the burden to be borne for any one year. Can it

be said that when a voter has consented to be taxed specially within certain limits he has consented to the raising of a sum already fixed by the board without reference to a limit, and which the board was not authorized to fix? Or, after he has been notified that he may vote for the sum mentioned in the notice, and undertakes to do so, can he do it by using the prescribed form of ballot? Who is to say that he intended to vote for the sum named in the notice when he does not say so himself. If the suggestion made by counsel can be adopted, why not adopt an expedient more convenient and effective, and make the prescribed form of the ballot read: "Shall a tax of —— dollars be raised to furnish" etc? Yet counsel would not contend that this would be lawful. Nor would he contend that it would be lawful for the trustees to fix a sum, instead of using the rate limit, in their preliminary resolution. It is the rule, particularly in regard to special taxes, that the various steps provided by law to be taken in laying them must be observed. "The municipal corporations of a state, having no inherent power to tax, must take such power as is conferred under the conditions and limitations that may be prescribed, and only for such purposes as may be expressed. This is fundamental." (Cooley on Taxation, 329.) The record of the proceedings must show that the provisions of the law have been complied with. "Every essential proceeding in the course of a levy of taxes must appear in some written and permanent form in the record of the bodies authorized to act upon them. Such a thing as a parol levy of taxes is not legally possible under the laws." (Cooley on Taxation, 339; *Moser* v. *White*, 29 Mich. 59; *Farrar* v. *Fessenden*, 39 N. H. 268.)

The fundamental idea of the section under consideration is that the voter must give his consent to a tax limited by bounds over which the trustees cannot step even with the voter's consent. After a suitable resolution has been passed by the board, the notice is given, the vote taken, and the record made up. From the record it does not appear that the voter has consented to the tax contemplated by the notice. It

does appear that he has consented that the board may levy a tax not to exceed 10 mills on the dollar, and yet the law leaves no option to the trustees to act upon this theory, but enjoins upon them the duty to proceed to find out the rate by another process, in which their discretion has no place. If it happens to exceed the rate limit, it must still be the rate. They cannot change it. In the meanwhile they are presuming, without any evidence before them to establish the fact, that the voters have consented to what they do.

In our opinion, it is impossible to observe the requirements of the statute, under the rules of construction applicable to it, without making a substantial amendment to it sufficient to carry out one or the other of the theories contemplated by its inconsistent provisions.

2. But, even if we agree with counsel as to the proposed change in the reading of section 1940b, what disposition shall we make of the difficulty touching the tax roll? Section 1941 is a part of the old act, but, reading it in connection with 1940b, it is perfectly apparent that the tax rate, however it may be fixed, is levied upon the roll as equalized by the board. As we showed in the original opinion, this roll must be based upon the valuations of the previous year, and there is no authority of law, either in the title relating to revenue or in that relating to education, to use this roll. In fact, it contravenes the express provisions of the former in this respect, and under the rule of construction laid down by the legislature, itself (Political Code, Section 5162) these must prevail where there is a conflict with other titles. Counsel seeks to avoid this difficulty, however, by invoking other rules of construction, viz: "That the contemporaneous and long-continued practice of officers required to execute or take special cognizance of a statute is strong evidence of its true meaning," and that "if the legislature, by its inaction, has long sanctioned a certain construction, language apparently unambiguous may be given by the court such construction, especially if the usage has been public and authoritative,"—citing, among other authorities: 23 Am. & Eng. Enc. Law, 340,

342, and notes; *Rogers* v. *Goodwin*, 2 Mass. 477; *U. S.* v. *Moore*, 95 U. S. 763; *People ex rel. Escott* v. *Hoffman*, 97 Ill. 234; *Scanlan* v. *Childs*, 33 Wis. 663; *The Laura*, 114 U. S. 411, 5 Sup. Ct. 881; *U. S.* v. *Hill*, 120 U. S. 169, 7 Sup. Ct. 510. Under these authorities counsel argues that in view of the inveterate construction which the county treasurers throughout the state must have given to this feature of the act, and especially in view of the acquiescence therein of the legislature, this court should allow it to stand. While the old act stood for many years upon our statute books, it was essentially different from the law as passed in 1895 and amended in 1897. This difference was pointed out in the original opinion. Prior to 1895, the power of the voter was unlimited in consenting to the laying of special school taxes. In the act thus amended a limit was imposed upon this power. Moreover, there was no express provision in the revenue laws touching the basis of taxation, and the legislature had not, prior to that time, laid down the rule of construction to be applied. While, in favor of vested rights and really inveterate practice and procedure, we should be strongly inclined to yield to the *argumentum ab convenienti*, we cannot consider it in face of the conditions here presented. The authorities cited are only applicable in a condition of things where vested rights have been acquired, and where for many years the construction insisted upon has been the rule of action, and to disturb it would be to work great public and private injury, and inconvenience. Under the act before us and the other provisions of law to which we must also look, the practice has not become inveterate. This tax was levied for the year 1897,— within two years of the date of the passage of the act. Its terms are not, apparently, unambiguous. They are both ambiguous and conflicting with each other and with other provisions of law which they cannot be held to amend or repeal.

The motion for a rehearing is denied.

*Denied.*