[No. 10318.   Department Two.   May 24, 1912.]

THE STATE OF WASHINGTON, on the Relation of Aetna Life Insurance Company, Plaintiff, v. J. H. SCHIVELY, Insurance Commissioner, Respondent.[1]

INSURANCE — REGULATION — LICENSE TO DO BUSINESS — KINDS OF BUSINESS AUTHORIZED — STATUTES — CONSTRUCTION. The insurance code, Laws 1911, p. 216, § 79, having provided that *domestic* corporations previously organized having a certain amount of capital may continue to transact their business under the provisions of the act, the clause in § 84, p. 219, prohibiting all companies from engaging in both a life and liability business "except as provided in § 79," does not authorize such double business by *foreign* companies previously doing business in this state, since the proviso and exemption of § 79 is expressly restricted to domestic companies only.

STATUTES—PASSAGE—MISTAKE— CONSTRUCTION — EVIDENCE — HISTORY OF ACT. Where an act contains no ambiguity, latent or patent, a mistake in the act as passed and approved by the governor cannot be shown by extrinsic evidence relating to the history of its passage and proposed amendments, agreed to in committee, but not reported through the mistake of a committee clerk.

Application filed in the supreme court April 13, 1912, for a writ of mandamus to the insurance commissioner, directing him to issue a license to a foreign insurance company. Denied.

*F. S. Blattner, Kerr & McCord,* and *Farrell, Kane & Stratton,* for relator.

*The Attorney General* and *J. T. S. Lyle, Assistant,* for respondent.

FULLERTON, J.—The Aetna Life Insurance Company is a stock insurance company, organized under the laws of the state of Connecticut. For some years past, it had been transacting a life, accident, and liability insurance business within the state of Washington, under licenses or certificates of authority issued to it by the state insurance commissioner.

[1]Reported in 123 Pac. 784.

The last of these licenses expired on April 1, 1912, and thereupon the company applied to the insurance commissioner for a renewal thereof. The commissioner, while willing to grant it a license to do a life insurance business, or a license to do a liability insurance business, refused to grant it a license to do life insurance business coupled with a liability insurance business, basing his refusal on the ground that the act of the legislature of March 10, 1911, prohibited a foreign stock insurance company from doing both life and liability insurance business at the same time. The company thereupon made this application for a writ of mandamus, directed to the commissioner, commanding him to issue the license demanded.

The relator first contends that the insurance commissioner places an unwarranted construction upon the act cited, arguing that the act, when properly construed, even without the aid of extrinsic evidence, permits insurance companies, organized as it is organized and having a paid up capital stock in a certain sum, to engage in the business of both life and liability insurance. The act referred to is chapter 49, of the Laws of 1911, pp. 161-298. The provisions of the act specially bearing upon the question are found in § 79, p. 216, and § 84, p. 219, thereof, the first mentioned section reading as follows:

"Every domestic insurance company previously organized, and licensed to transact insurance business in this state at the time this act goes into effect, is hereby recognized as an existing company, and shall have the right to continue such business under the provisions of this act: Provided, That any such company whose capital does not meet the requirements of this act shall have two years from the first day of January, nineteen hundred and twelve, in which to conform to the requirements of this act relating thereto: Provided further, That any such company whose charter or articles of incorporation permit it to make life, accident, health and liability insurance, and shall have been licensed to transact such business in this state prior to the first day of February, 1911,

having a capital of not less than three hundred and fifty thousand dollars, shall be permitted to continue to transact such kind of business under the provisions of this act."

Section 84 defines the character of business stock insurance companies of all kinds, domestic or foreign, may engage in in this state, and prohibits such companies from engaging in both a life and liability business at the same time, "except as provided in § 79 of this act." It is the relator's contention that the proviso in some way broadens the provisions of § 84, and permits foreign stock companies which, prior to the passage of the act, were engaged in the business of writing both life and liability insurance, to continue therein. But manifestly this privilege was granted by § 79 only to certain domestic corporations; namely, those previously organized, having a capital of not less than three hundred and fifty thousand dollars, and having a license to do such business at the time of the passage of the act. The words "such corporation," in the first line of the second proviso, plainly refers to the domestic insurance company defined in the first paragraph of § 79, and has no reference to anything contained in § 84. This question in another form was before us in the late case of *State ex rel. North Coast Fire Ins. Co. v. Schively, ante* p. 148, 122 Pac. 1020. Construing the section, we there said:

"This section, exclusive of the last proviso, does no more than preserve to domestic insurance companies the power to continue in business 'under the provisions of this act' pending a time which the legislature deemed adequate to enable them to make their capital, surplus, etc. conform to the act. The grace of this section goes no further. It accords no rights as to writing different classes of insurance except those accorded under the general provisions of the act itself, other than those found in the last proviso. The contention that the legislature intended to permit all domestic corporations which had been previously organized and licensed to do business to continue writing every class of insurance any provisions of the new insurance code to the contrary notwithstanding, finds no reasonable support in this section. . . .

"The second proviso of § 79, p. 216, is as follows:

" *'Provided further,* that any such company whose charter or articles of incorporation permit it to make life, accident, health and liability insurance, and shall have been licensed to transact such business in this state prior to the first day of February, 1911, having a capital of not less than three hundred and fifty thousand dollars, shall be permitted to continue to transact such kind of business under the provisions of this act.'

"This is the only instance in the insurance code where a domestic company organized and licensed to transact business prior to the enactment of the insurance code is permitted to continue making classes of insurance prohibited to the same company by the general terms of the code. If the legislature had intended that domestic insurance companies licensed to make fire and plate glass insurance prior to the enactment of the code, were to be permitted to continue writing both classes under the code, it would have so provided by a specific exception, as it did in the case of prior licensed domestic companies making life and liability insurance. The specific exception in favor of life insurance companies is a plain implication against any intention to make any other exception not so expressed."

This language is applicable to the question at bar. Since the exception is, by its terms, made applicable to domestic. corporations only, it is plain that the legislature intended that only such corporations should have the benefit of the exception.

With its application for a writ of mandamus, the relator filed a transcript of certain evidence taken on a hearing had before the superior court on an application for a like writ, made before that court, and the parties have stipulated that the evidence so taken may be considered by us, subject to an objection as to its materiality and competency. By this evidence, it appears that the insurance code now under consideration was drafted by a commission appointed by the governor, pursuant to the act of the legislature of March 17, 1909 (Laws 1909, p. 624) ; that § 79 of the act, as drafted by the commission and introduced into the legislature, read

substantially as it now appears in the printed act; and that § 84 read substantially as it now reads, with the exception that the concluding phrase of subd. 3, and the concluding phrase of subd. 6, were omitted; that, when the act was in the hands of the senate committee to whom it had been referred, it was suggested that, as written, the act might preclude certain foreign insurance companies, particularly the relator, who were then doing a life, accident, and liability business in the state, from continuing such business; that, while the act was in the committee's hands, it was agreed by the committee that the word "such" in the first line of the second proviso should be omitted, and the phrase, "except as provided in § 79 of this act" added to subdivisions 3 and 6, of § 84; that the latter amendments were reported out of the committee, and the first agreed to be so reported, but by some mistake of the committee clerk it was not done; and that the act as it left the committee was passed and approved by the governor without other amendments than those so reported.

It is contended here that this is a sufficient showing of mistake on the part of the legislature to warrant the court in reading § 79 of the act as if the word "such" had been actually omitted from the second proviso. But we cannot agree with this contention. Where the act as passed contains an ambiguity, either latent or patent, reference may be had to the history of the bill before the legislature, beyond the enrolled bill, to ascertain the legislative intent (*Scouten v. Whatcom*, 33 Wash. 273, 74 Pac. 389); but the intent of an act fair on its face must be ascertained from the language of the act itself. *State ex rel. Reed v. Jones*, 6 Wash. 452, 34 Pac. 201, 23 L. R. A. 340. This act falls within the latter rule. It contains no ambiguity, either latent or patent, and must be accepted by the courts as expressing the legislative will in the form in which it was passed by that body and met the approval of the governor.

The writ is denied.

DUNBAR, C. J., ELLIS, MOUNT, and MORRIS, JJ., concur.