## NELSON R. NORTON, ET AL., Appellants,

### *vs.*

## DUNCAN C. REED, ET AL., Respondents.

APPEAL FROM THE RACINE CIRCUIT COURT.

Chapter 87 of the Session Laws of 1857, in relation to " voluntary assignments with a view to insolvency " was designed to apply to an insolvency under chapter 128 of the revised statutes. Or, if it has not such application it is void for uncertainty.

This was an action of trespass, *de bonis*, commenced by the appellants against the respondents. The appellants claimed title to the goods, as assignees in possession, of one Orson Sheldon.

The respondents, defendants below, in their answer, alleged that the assignment by Sheldon to the plaintiffs was fraudulent, and made to hinder and delay the creditors of the said Sheldon. Also that the said assignment was made with a view to insolvency, and that the said plaintiffs, as such assignees, had failed and neglected to execute a bond in a penal sum, and with sufficient sureties, approved by the county judge of said Racine county, conditioned to pay over all monies, &c., as required by the act of the legislature, entitled " an act to regulate voluntary assignments with a view to insolvency," approved March 7, 1857.

The defendants further answered, justifying the taking of the goods, by the said Duncan C. Reed, Deputy Marshal, by virtue of a writ of attachment issued out of the U. S. District Court for the district of Wisconsin, at the suit of George W.

Flanders against the said Orson Sheldon, and averring that the other defendants were acting under the deputy marshal and by his orders.

Upon the trial of the cause in the court below, the facts were admitted as follows :

" On the 26th day of October, A. D. 1857, Orson Sheldon was the owner and in possession of a stock of goods, merchandise and ready made clothing, including (among other goods) all those mentioned in the complaint; on that day he executed an assignment of all his property to the plaintiffs, who were and are residents of the state of Wisconsin, for the benefit of his creditors, as set forth in the complaint; that plaintiffs took possession as assignees under the assignment, and remained in possession until November 5th, 1857, on which day the defendant, Duncan C. Reed, with the other defendants as assistants, acting as a deputy marshal of the United States, by virtue of a writ of attachment, issued out of the district court of the United States, for the district of Wisconsin, in favor of George W. Flanders, a citizen and resident of the state of Illinois, against the said Orson Sheldon, who is now and then was a resident of this state, on a debt due to said Flanders from said Sheldon, at the time of the assignment, took possession of the property and merchandize described in the complaint, being a part of the property so assigned, and carried the same away, and that the value of the property so taken was four thousand six hundred and thirty-nine dollars and seventeen cents."

It was further admitted that the assignees executed no bond as required by chapter eighty seven of the session laws of one thousand eight hundred and fifty-seven. The assignment was also read in evidence.

No other testimony was given, and thereupon the said circuit judge charged the jury that said assignment was absolutely void, as to the creditors of the assignor, under chapter eighty-seven of the session laws of 1857, and that the plaintiffs claiming as assignees under such assignment, are not entitled

to recover, and that they would therefore find for the defendants. To which charge the plaintiffs excepted.

The jury returned a verdict for the defendants, on which judgment was entered, and for costs.

Only a single point is discussed in the opinion of the court, where it is fully stated; depending solely upon the construction to be given to the act of the 7th of March, 1857.

*By the Court*, SMITH, J.   The appellants in this case claim under an assignment made by Orson Sheldon. The defendants claim in the right of attaching creditors of the said Sheldon, and rely for their defense upon impeaching the assignment aforesaid.

The only ground on which it is attempted to impeach or invalidate the assignment is contained in the charge of the circuit court to the jury on the trial, to the effect, " that the said assignment was absolutely void as to the creditors of the assignor, under and by virtue of chapter eighty-seven of the session laws of 1857, and that the plaintiffs claiming as assignees under such assignment were not entitled to recover."

This charge was based upon the admitted fact that the assignees executed no bond as required by the said chapter 87 of the laws of 1857.

It therefore becomes our duty to determine the application and legal effect of the said statute, which provides that all assignments made *with a view to insolvency*, shall be void as to creditors, unless the assignee shall execute a bond in a penal sum and with sureties, to be approved by the county judge, &c., conditioned to pay over all moneys that shall come into his hands from the effects of the assignor, after deducting the necessary expenses of performing his trust to the several persons or parties named in the assignment, according to the tenor and effect thereof.

The first question which presents itself for our consideration

is, to what class or kind of assignments does this statute apply? Not certainly to any and every assignment made by a debtor for the benefit of his creditors. This may be, and frequently is done by persons perfectly solvent, with a view to a more speedy and satisfactory adjustment and payment of debts, and realization of the surplus estate. But the class of assignments to which this statute has reference are those made with a view to insolvency. It can apply to none others. Hence the omission to execute the bond invalidates no other assignments than those made with a view to insolvency. But how is this fact to be ascertained, whether it is made with a view to insolvency or not? The statute prescribes no mode of ascertaining the fact. There is nothing to show that this assignment was made with such views. No inquiry as to that fact was instituted; nor do we perceive how it could have been done.

But we are of the opinion that the act in question was designed to apply to proceedings in insolvency under chapter 128 of the revised statutes, and that the phrase "with a view to insolvency" has reference to the object and design of an insolvent debtor to avail himself of the benefits of that statute. Although there is evidently some mistake or oversight in the original draft, or in the engrossing of the act, we do not see as it can have any intelligent application to any other class of cases that the one stated.

However, if the act of 1857 has not the application above mentioned, it must be declared void for uncertainty. How is the county judge to know whether the assignment is made "with a view to insolvency" by the debtor? Whether the "view" is near or remote? Who is to be made the obligee of the bond? How is his assent to become a party to the contract and proceeding to be ascertained? What is the nature or extent of the trusts he assumes? Or is it not necessary that he assent at all? Can he be made an involuntary obligee or trustee? All these questions suggest themselves, showing that the act is void for uncertainty if it be general in its purview.

We think if the act of 1857 does not apply to chapter 128 of the revised statutes, it is incapable of practical construction on account of its uncertaintity and must therefore be declared void.

If this view be correct, it follows that the charge of the court below to the jury was erroneous, and that the judgment must be reversed. Judgment reversed with costs.