[No. 4944. Decided November 30, 1903.]

MILLER G. SCOUTEN, *Appellant,* v. CITY OF WHATCOM *et al., Respondents.*[1]

STATUTES—CONSTRUCTION—AMENDMENTS—LEGISLATIVE INTENT— AMBIGUITY—WHEN SHOWN. Where an amendatory act (Laws 1903, p. 279) for the consolidation of cities provides that the special election of officers for the new city shall be held "six months after" the filing of the abstract of the vote for consolidation, and that it be called immediately, requiring a six months' notice, and the former act provided that it shall be held "within six months;" and another section of both the old and new acts provides that all special elections shall be held in accordance with the general election law, requiring a fifteen days' notice, such an ambiguity exists that an examination into the legislative intent is necessary, especially since the requirement that it be held six months after the date of filing may bring the election on Sunday, and since it is usual to allow latitude to avoid confusion. (Fullerton, C. J., and Mount, J., dissent.)

SAME—ENROLLED BILL—WHEN NOT CONCLUSIVE. Where a doubt exists as to the legislative intent in the wording of an ambiguous statute, reference may be made to the history of the bill before the legislature, beyond the enrolled bill, to ascertain the intent.

SAME—MUNICIPAL ELECTIONS—TIME OF HOLDING. Where the original bill (Laws 1903, p. 279) as introduced provided that an election should be held "within six months" after a certain date, and such clause remained in the bill through all its stages up to and including its final passage, when in the enrolled bill for the first time it appears as "six months after" said date, such change

[1]Reported in 74 Pac. 389.

is manifestly a clerical error of the enrolling clerk, and in connec-
tion with an inconsistent section requiring a fifteen days' notice,
the enrolled bill requiring six months' notice does not express
the legislative intent, and must be construed to permit the elec-
tion "within" six months upon fifteen days' notice, especially as
the act was only amendatory upon a distinct point, no other
change being made. (Fullerton, C. J., and Mount, J., dissent.)

Appeal by plaintiff from a judgment of the superior
court for Whatcom county, Neterer, J., entered Novem-
ber 14, 1903, dismissing an action brought by a tax payer
to restrain the first election of officers for the consolidated
city of Whatcom and Fairhaven, upon overruling a de-
murrer to the defendants' affirmative defense.    Affirmed.

*A. E. Mead,* for appellant.

*H. M. White* and *Brown & Rose,* for respondents.    The
enrolled bill is conclusive only as to the regularity of its
passage.    *State ex rel. Reed v. Jones,* 6 Wash. 452, 34
Pac. 201, 23 L. R. A. 340.    When a question arises as to
the precise terms of a statute, resort may be made to any
source of information which shows the intent.    *Gardner
v. The Collector,* 6 Wall. 499; *South Ottawa v. Perkins,* 4
Otto 260, 24 L. Ed. 154; *In re Duncan,* 139 U. S. 449,
11 Sup. Ct. 573; *Jones v. United States,* 137 U. S. 202,
11 Sup. Ct. 80; *Lyons v. Woods,* 153 U. S. 649, 14 Sup.
Ct. 959.    Clerical errors may be corrected and read as
though the intended words were inserted.    *Howlett v.
Cheetham,* 17 Wash. 626; *Ex parte Hedley,* 31 Cal. 109;
*State v. Stillman,* 81 Wis. 124, 51 N. W. 260; *Milwaukee
County v. Isenring,* 109 Wis. 9, 85 N. W. 131.    It is com-
petent to resort to circumstances surrounding the passage
of the bill, journals, proceedings and the history of the
act.    *Church of Holy Trinity v. United States,* 143 U. S.
457, 12 Sup. Ct. 511; *Smith v. People,* 47 N. Y. 330;
*Blake v. National Banks,* 23 Wall. 307, and cases above
cited.

HADLEY, J.—The cities of Whatcom and Fairhaven are contiguous municipalities of the third class. The legislature of 1890 provided for the consolidation of contiguous cities, the method thereof being set forth in § 10, at page 138, Session Laws 1890. On the 27th day of October, 1903, in pursuance of the terms of said statute, the aforesaid cities, by the necessary vote of the electors of each municipality, declared in favor of their consolidation under the name of the city of Bellingham. On the 2d day of November, 1903, said vote was duly canvassed as provided by law, an abstract thereof was recorded in the minutes of the proceedings of the city council of each city, and a certified copy of such abstract was transmitted to the secretary of state, and by him filed in his office. It is provided in the statute above cited that immediately after such filing the legislative body of that one of such corporations having the greater population, as shown by the last state census, shall call a special election for the election of officers required by law to be elected in corporations of the class to which such new corporation shall belong.

It is conceded that the combined population of the two cities, as shown by the last census, placed the new and consolidated city in the rank of second class cities, as classified under the laws of this state. The city of Whatcom contained the greater population of the two, and, after the filing of said certified abstract of the vote with the secretary of state, the city council of that city, on the 9th day of November, 1903, by resolution, called such special election for the election of the officers provided by law for cities of the second class; said election to be held on the 22d day of December, 1903.

Thereafter the appellant, a resident taxpayer, instituted this action and sought an injunction against respondents

to prevent the allowance and payment of any claim for expenses growing out of the holding or attempted holding of said special election, on the ground that the date fixed therefor is premature and that the action of the council in fixing such date was void. The theory upon which the action is waged is based upon the statute above cited, as it is claimed by appellant to have been amended by the legislature of 1903. See Chap. 145, p. 279 *et seq.*, Session Laws 1903.

An examination of the statute of 1890 shows that the only method provided for consolidating contiguous cities of all classes was by an election to be held in each of the cities sought to be consolidated. The statute, as amended in 1903, contains a proviso to the effect that cities of the third and fourth classes may be annexed to cities of the first class without the necessity of an election in such cities of the first class. When a vote in a city of the third or fourth class is in favor of annexation, the city council of such city shall file a petition, together with an abstract of the vote so taken and canvassed, with the city council of such city of the first class, which latter council may thereafter by ordinance complete the work of annexation. The probable purpose of this proviso was to save the expense of holding special elections upon this subject in cities of the first class. This provision does not affect the controversy here, except as it may be incidentally involved in the discussion hereinafter. We refer to it here in order to show that said proviso contains the only change that was made in the law of 1890, unless it was also changed in the particular urged by appellant, and upon which he bases this suit.

The law of 1890 provided as follows:

"Immediately after such filing the legislative body of that one of such corporations having the greatest popu-

lation, as shown by the last state census, shall call a special election, to be held in such new corporation, for the election of the officers required by law to be elected in corporations of the class to which such new corporation shall belong; which election shall be held within six months thereafter."

The amended law of 1903, as found in the published session laws, is in all respects like that of 1890, with the exception of the proviso above mentioned, and with the further exception that the word "within" is omitted from the last clause of the portion quoted above, making it read, "which election shall be held six months thereafter." Appellant therefore contends that under the statute as amended the special election for the election of officers must be held six months from the date the certified abstract of the vote was filed with the secretary of state, and that the date fixed by the city council of Whatcom as aforesaid is therefore premature and unauthorized in law.

The respondents answered the complaint and recited the history of the amending bill in the legislature of 1903. It appears by the averments, that the original bill as introduced contained the word "within" in the clause above quoted; that the word was never omitted by any motion to amend or otherwise; that the bill as passed by both branches of the legislature contained the said word; that the bill as intended to be signed by the president of the senate, speaker of the house, and the governor, contained the word, but that the enrolling clerk of the senate, by error, inadvertence, or oversight, omitted it when enrolling the bill. It is alleged that as the bill was actually passed by the legislature the statute of 1890, in this particular, was unchanged, and that the law still authorizes the holding of such special election at any time within six months

from the date of filing the certified abstract of the vote with the secretary of state.

The appellant demurred to the affirmative answer of respondents on the ground that it is insufficient in law to constitute a defense. The court overruled the demurrer, and the appellant having declined to further plead, judgment was entered in favor of respondents, and the cause was dismissed at appellant's costs. He has appealed from the judgment. By stipulation, and because of immediate public necessity, the cause was advanced for hearing in this court.

It is urged by respondents that the statute as published in the Session Laws of 1903 is involved in such ambiguity that an interpretation is necessary in order to determine the legislative intent. It will be observed that the statute, both originally and as amended, requires that a special election shall be called *immediately* after the abstract of the vote on consolidation is filed with the secretary of state. It is also provided in each instance that "such election shall be called and conducted in all respects in the manner prescribed, or that may hereafter be prescribed by law, for municipal elections in corporations of such class." § 844, Bal. Code, provides that elections in cities of the second class shall be conducted according to the general election laws of the state. The general election laws provide that but fifteen days' notice of any special election is required. § 1335, Bal. Code. It follows that but fifteen days' notice is required here, if we refer to the general laws.

Appellant, however, contends that the statute now under consideration requires that the special election shall be called six months in advance of the time it shall be held. The calling of the election involves notice thereof.

The fact must be brought to the knowledge of the public by notice, since there could be no manifest purpose in calling an election six months in advance without informing the public of it through the medium of notice. This would require the giving of notice for a period of six months, which is inconsistent with the other provision of the statute that refers to the general laws, and requires but fifteen days' notice. The statute of 1890 provides that the election may be held at any time within six months, and under that provision the city council may fix the date and give fifteen days' notice thereof.

There is another element involved if the statute shall be literally read as published. No definite date is fixed for filing the abstract of the vote with the secretary of state, and if the election is required to be held six months from the date the abstract may be filed, it will be seen that it is possible for the date of the election to fall upon a Sunday or legal holiday, thus making it impossible to hold an election at such a time under other provisions of law. It is, we believe, an anomaly in legislation for the date of an election to be irrevocably fixed by reference to an indefinite time depending upon circumstances. It is usual to fix a definite time or to leave such latitude to subordinate municipalities that the date may be fixed without resulting in confusion. Under the statute of 1890, the date can be fixed by the city council without conflicting with any Sunday or legal holiday. For the reasons above indicated, we believe such ambiguity exists in this statute as published that an examination into the legislative intent is necessary in order to interpret it.

In determining the legislative intent, appellant contends that the courts are not authorized to look into the history of the legislation, and that they cannot go beyond the

wording of the bill as enrolled. It is also contended that this court has so held in *State ex rel. Reed v. Jones*, 6 Wash. 452, 34 Pac. 201, 23 L. R. A. 340. In that case, however, the validity of the law itself was attacked on the ground that the constitutional requirements had not been pursued in the passage of the bill. It was held that when an enrolled bill is fair upon its face the courts will accept it as having been regularly enacted, and will not inquire as to whether the legislature has or has not followed constitutional requirements in its enactment. A different question is presented in the case at bar. The validity of the law under consideration is not attacked; it is merely a question of determining what the legislature intended by a valid law.

It becomes interesting, therefore, to determine to what extent the courts may examine into the history of legislation or resort to extrinsic circumstances when attempting to construe the legislative intent in a statute containing ambiguities, but at the same time a valid law. In *Howlett v. Cheetham*, 17 Wash. 626, 50 Pac. 522, this court had occasion to discuss a similar question. A regularly enacted statute, as enrolled and published, contained a repealing clause purporting to repeal former legislation. It was contended that the repealing clause was inconsistent with other portions of the act, and that such ambiguity existed as made it necessary to inquire into the legislative intent in order to construe the statute. The court observed, at page 630:

"The only object of construction is to ascertain the meaning and intention of the legislature, and when that intention is discovered it is controlling, although it may be contrary to the strict letter of the statute."

Authorities are there cited to the effect that, when a doubt exists as to the legislative intent, reference may be

made to the circumstances under which, and the purposes for which, a statute is passed, in order to ascertain such intent. In referring to such circumstances and purposes, the court in that case, both in the main opinion and in the opinion concurring specially, considered the history of the bill as it was before the legislature. From such history, and from the circumstances surrounding the passage of the bill, it was concluded, that the words of repeal, although absolute in themselves, were qualified by the intention of the legislature, as manifested in other parts of the same act; that the repealing clause, having been inadvertently included, did not express the legislative intent; and that the real intent should control as against the strict words of the statute; and it was therefore held that the law actually passed without the repealing words.

In *Blake v. National Banks,* 23 Wall. 307, 23 L. Ed. 119, the Supreme Court of the United States construed an ambiguous statute passed by Congress. In order to ascertain the legislative intent, the court referred to the journal of the house of representatives. At page 319, the court observed:

"Under these circumstances, we are compelled to ascertain the legislative intention by a recurrence to the mode in which the embarrassing words were introduced, as shown by the journals and records, and by giving such construction to the statute as we believe will carry out the intentions of Congress. The intention of the house, upon the record we have quoted, is plain."

A similar course was pursued in *Church of the Holy Trinity v. United States,* 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226. At page 465, the court observed:

"We find, therefore, that the title of the act, the evil which was intended to be remedied, the circumstances surrounding the appeal to Congress, the reports of the com-

mittee of each house, all concur in affirming that the intent of Congress was simply to stay the influx of this cheap, unskilled labor."

Respondents cite the case of *Gardner v. The Collector,* 6 Wall. 499, 18 L. Ed. 890, and in their brief they quote the following general observations from the opinion at page 511:

"We are of opinion, therefore, on principle as well as authority, that whenever a question arises in a court of law of the existence of a statute, or of the time when a statute took effect, or of the precise terms of a statute, the judges who are called upon to decide it have a right to resort to any source of information which in its nature is capable of conveying to the judicial mind a clear and satisfactory answer to such question; always seeking first for that which in its nature is most appropriate, unless the · positive law has enacted a different rule."

We think much of the quotation is pertinent to the question presented here, where legislative intent only is involved; but it includes a broader statement of a general rule than this court followed in *State ex rel. Reed v. Jones, supra,* and also a broader rule than the same court has since followed when the actual existence or validity of a statute was involved. In *Field v. Clark,* 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294, the validity or actual existence of a statute was attacked on the ground that the constitutional procedure had not been followed in the introduction and passage of the bill. It was held that the court would not look back of the enrolled bill, which had been authenticated by the signatures of the presiding officers of the two houses of Congress and by the approval of the president, and declare that such an act was not in fact passed and did not become a law. The point decided was essentially similar to that decided by this court in *State*

*ex rel. Reed v. Jones.* When it came to the actual construction of the statute as passed, the court did not find it necessary to look beyond its own terms. The principal question raised was the validity of the statute.

In *United States v. Ballin,* 144 U. S. 1, 12 Sup. Ct. 507, 36 L. Ed. 321, a similar question was presented. The court observed as follows, at page 4:

"Assuming that, by reason of this latter clause, reference may be had to the journal, to see whether the yeas and nays were ordered, and, if so, what was the vote disclosed thereby, and assuming, though without deciding, that the facts which the Constitution requires to be placed on the journal may be appealed to on the question whether a law has been legally enacted, yet, if reference may be had to such journal, it must be assumed to speak the truth."

Reference was then made to the journal, and assuming that it spoke the truth,. the court found that the bill had passed with sufficient regularity, but left the question undecided in that case whether the journal may be appealed to on the question whether a law has been legally enacted. As we have seen, that question is not involved here, and we therefore find nothing in the cases mentioned from the Supreme Court of the United States that conflicts with the contention of respondents here. In *Ex parte Hedley,* 31 Cal. 109, it was held that where there is an evident mistake in the use of a word in a statute, and it is apparent what word was intended, it will be read as though the intended word were inserted. To similar effect is *State v. Stillman,* 81 Wis. 124, 51 N. W. 260.

Sutherland on Statutory Construction, at § 300, discusses generally the subject of resorting to legislative history in order to determine legislative intent. Reference is there made to the decisions of different states where it has been held that resort may be had to the legislative jour-

nals for that purpose. In *Milwaukee County v. Isenring,* 109 Wis. 9, 85 N. W. 131, 53 L. R. A. 635, the court, after citing many cases to support the rule that courts, when seeking to determine the contents of a statute, "may look to the enrolled bill, to the engrossed bill, and to any other legitimate evidence within their reach," observed as follows: "What has been said clears the way for the court to examine the original bills in question in this case.  .  ."

Under the authorities above discussed, including *Howlett v. Cheetham, supra,* by this court, resort may be had to the history of the statute in question in order to determine the legislative intent. As we have seen, that history shows that the original bill as introduced contained the word "within" in the clause hereinbefore quoted. It remained in the bill at all subsequent stages of its history up to and including the time of its actual passage by both branches of the legislature. Its absence is noted for the first time in the enrolled bill. Manifestly, therefore, its omission is due to the clerical oversight and inadvertence of the enrolling clerk, and not to the intention of the legislature. That the legislature intended to include the word is further emphasized by the fact that with the word included the statute becomes consistently operative in all its parts, while with its omission ambiguity, uncertainty, and confusion are the logical result, and may possibly lead to what in the briefs of counsel is appropriately termed "municipal chaos." Such a possibility, taken in connection with the bill as actually introduced and passed, impels the conclusion that the law as enrolled and published does not clearly express the legislative intent.

Under the authorities the following circumstances are also subjects of legitimate consideration in arriving at the intent of the legislature: As hereinbefore stated, the bill

as introduced provided an amendment relating only to the annexation of third and fourth class cities to first class cities. No other change of the former law was proposed at that time, and no other was ever proposed in the history of the bill. It is therefore apparent that the intention in the minds of the members of the legislature was to amend the law in the one particular only.

For the foregoing reasons, we hold that the statute of 1890 was not amended in the particular urged by appellant. The superior court, therefore, did not err, and the judgment is affirmed.

DUNBAR and ANDERS, JJ., concur.

FULLERTON, C. J.—I dissent. It seems to me that the provision in question is not ambiguous, and is not out of harmony with the other provisions of the law, but is so plain as not to require construction.

MOUNT, J., concurs with FULLERTON, C. J.