[No. 21070.   Department One.   August 6, 1928.]

## BUNGALOW AMUSEMENT COMPANY, *Appellant*, v. THE CITY OF SEATTLE *et al.*, *Appellants*.[1]

[1] MUNICIPAL CORPORATIONS (310)—POLICE POWER—NATURE AND SCOPE. Under our Constitutional and legislative grants of police power to cities of the first class, they have, within their territorial boundaries, the same powers with reference to the regulation of dance halls as the legislature itself.

[2] CONSTITUTIONAL LAW (114)—MUNICIPAL CORPORATIONS (325)—POLICE POWER—PROHIBITION OF BUSINESS—DANCE HALLS. Public dances fall within the class of vocations that are subject to regulation or prohibition by the exercise of the police power, on the ground of potential evil consequences.

[3] SAME (114)—MUNICIPAL CORPORATIONS (325). Where a license for a public dance hall expressly reserved to the city summary remedies in the exercise of the police power, previously provided by ordinance, the licensee can not claim any infringement of constitutional guarantees in the exercise of the plenary and discretionary powers conferred upon police or administrative officers, in regulating or suppressing the business licensed, without judicial hearing.

[4] SAME (114). In such a case, for the same reason, it can not be claimed that an ordinance prohibiting the soliciting of dancing partners on a commission basis is unreasonable.

Cross-appeals from a judgment of the superior court for King county, Beals, J., entered October 15, 1927, in an action for an injunction, tried to the court. Affirmed on plaintiff's appeal, and reversed on defendants' appeal.

*Edward H. Chavelle*, for plaintiff-appellant.

*Thomas J. L. Kennedy* and *Hugh R. Fullerton*, for defendants-appellants.

PARKER, J.—The plaintiff amusement company, a corporation, sought in the superior court for King county an injunction restraining the defendant city

[1]Reported in 269 Pac. 1043.

and its constituted authorities from interfering with
the operation of a public dance hall maintained by the
amusement company in pursuance of a license granted
by the city under its Ordinance No. 48022, providing
for the licensing and regulation of public dance halls
and other places of public amusement.  The superior
court rendered its final decree awarding to the amuse-
ment company injunctive relief restraining the city
from enforcing § 77 of the ordinance as therein pro-
vided; which section, as we shall presently notice, gives
to the police department of the city certain summary
restraining and supervisory powers over the opera-
tion of public dance halls.  The decree also expressly
denies any further relief to the amusement company.
From this disposition of the case in the superior court,
both the city and the amusement company have ap-
pealed to this court; the city contending that the su-
perior court erred in holding § 77 of the ordinance to
be unconstitutional, as was the ground of the award-
ing of its decree against the city; and the amusement
company contending that the superior court erred in
holding certain other sections of the ordinance con-
stitutional and refusing injunctive relief against the
city accordingly. .

The following provisions of the somewhat lengthy
ordinance are all that need be here noticed:

"Section 69.   The term 'Public Dance' whenever
used in this ordinance, shall be held and construed to
mean any dance to which the public is admitted, and
which is held and conducted for a profit, direct or in-
direct, and the term 'Public Dance Hall' wherever
used in this ordinance shall be held and construed to
mean any place where public dancing, as herein de-
fined, is permitted.

"Section 70.   It shall be unlawful to open up, con-
duct, manage, operate or maintain a public dance hall
within the City of Seattle, without a valid and subsist-

ing license so to do, to be known as a 'Public Dance Hall License.' ''

Here follows schedule of license fees graduated according to floor area, and also provisions for the issuance of permits by the chief of police and licenses by the council, apparently both being required to authorize the maintenance of a dance hall.

"Section 72.   The Chief of Police may refuse to issue a dance permit, or he may cancel or revoke any such permit after it has been issued, if he shall learn that the same was procured by fraud or false representation of facts, or that the applicant or permittee has failed to comply with the provisions and requirements of this ordinance, or has violated any provision hereof, or for any other reason which, in the opinion of the Chief of Police, will be detrimental to the public peace, health or welfare.   Any person may appeal to the City Council from any decision of the Chief of Police in refusing to issue a dance permit under the provisions of this ordinance, or revoking a permit previously granted by him.

"The City Council is authorized to review any action of the Chief of Police relative to such refusal to issue a dance permit, or the revocation of a permit previously issued, and the action of the City Council shall be final.  . . . ''

"Section 77.   It shall be unlawful for any person to whom a dance hall license is issued, or for any person conducting a public dance hall under license or permit from the City, to allow or permit in any public dance hall any indecent act to be committed or any disorder or conduct of a gross, violent or vulgar character, or to permit in any such dance hall any prostitute, pimp or procurer.   Any member of the Police and Detective Department, or the Supervisor of Dances, shall have the power, and it shall be the duty of each of them, to cause any dance hall to be vacated whenever any provision of this ordinance relating to public dance halls, or public dances, is being violated or whenever any indecent acts shall be committed, or when any disorder

or conduct of a gross, violent or vulgar character shall take place therein.''

"Section 83-A. It shall be unlawful, from and after the first day of March, 1927, for any person in or about any public dance hall, or other place in which public dancing is conducted, to solicit dancing partners on a commission basis, direct or indirect, or to solicit the purchase of refreshments on a commission basis, direct or indirect, and it shall be unlawful for the owner, manager or other person connected with the operation of any dance hall, or any other place in which dancing is conducted, to permit or allow any such solicitation therein.''

All of these provisions were in the ordinance as originally enacted, or as it was thereafter amended, before the amusement company was granted its permit and license.

[1] We do not understand counsel for the amusement company to here contend that the city's police power of regulation or prohibition of dance halls, of the nature maintained by the amusement company under its permit and license, is any less than that which the legislature of the state possesses. Indeed, under our direct constitutional grant of police powers to cities generally, our legislative grant of police powers to cities of the first class and the decisions of this court, it is the law in this state that cities of the first class, to which class Seattle belongs, now have full police powers, of the nature here in question, within their territorial boundaries, limited only by constitutional restrictions as the legislature is so limited. Section 11, Art. 11, state constitution; Rem. Comp. Stat., § 8966 [P. C. § 678]; *Detamore v. Hindley*, 83 Wash. 322, 145 Pac. 462; *Allen v. Bellingham*, 95 Wash. 12, 163 Pac. 18; *State ex rel. Lane v. Fleming*, 129 Wash. 646, 225 Pac. 647, 34 A. L. R. 500; *Manos v. Seattle*, 146 Wash. 210, 262 Pac. 965. So, our problem is as to

whether or not the enforcement of any of the above quoted provisions of Ordinance No. 48022, more particularly the enforcement by the summary methods therein prescribed, would be in violation of the amusement company's constitutional rights.

[2]    We first inquire as to the nature of the dance hall rights or privileges being exercised by the amusement company under its license.   It is well settled law that there are certain businesses and vocations subject to regulation by the exercise of the police power, to the extent of even entirely prohibiting them; this upon the ground of their potential evil consequences.   Probably, the most common of such businesses is and was the traffic in intoxicating liquor, even before the coming of state and national constitutional prohibitions against such business.   Numerous other businesses and vocations have been by the courts regarded as being in that class and subject to regulation, to the extent of entire prohibition by legislation, apart from express constitutional authority for such legislation.   In our decision in *State ex rel. Sayles v. Superior Court,* 120 Wash. 183, 206 Pac. 966, we, in effect, held public pool halls to be in that class.   In *Asakura v. Seattle,* 122 Wash. 81, 210 Pac. 30, we recognized the pawnbroking business as being in that class.   In our decision in *Manos v. Seattle,* 146 Wash. 210, 262 Pac. 965, we recognized public dance halls to be in that class, expressing our view as follows:

"The objection is not to dancing in and of itself. Dancing conducted in private homes, and in more public places, when properly supervised, is an innocent and wholesome recreation and amusement, but public dance halls, especially in populous cities, have long been recognized as an influence detrimental to the public welfare.   They are the favorite resorts of the vicious and immoral,  . . ."

In *Town of Linden v. Fischer,* 154 Minn. 354, 191 N. W. 901, Chief Justice Brown, speaking for the court, said:

"The statute in question and the town by-law enacted by its authority have for their foundation and support the police power of the state, always available in furtherance of the general public welfare. That public dance halls, carnivals, shows, pool and billiard halls, at which congregate indiscriminate assemblies of people as spectators or participants, are subject to regulation and control under that power, and, in the interest of public morals, there can be no serious question. Improperly managed and conducted, they are breeders of vice and wickedness, and constitute a public nuisance, and may be either wholly prohibited or licensed and subjected to police supervision, as the legislative department may determine."

While there may be decisions of the courts seemingly not in harmony with these views, we think the reason and weight of authority support our conclusion that public dance halls, of the nature here in question, may be constitutionally entirely suppressed and prohibited by the exercise of police power, and hence become subject to any and all regulations which the body lawfully exercising that power may impose.

[3] It is apparent that the trial court's injunction is directed particularly to the summary method of suppressing disorder and misconduct in public dance halls, as authorized by this ordinance, and is rested upon the theory that such summary suppression, more particularly the vacating of the amusement company's hall by the city authorities, would be in violation of the amusement company's constitutional rights because done and authorized by the ordinance to be done without judicial hearing of any nature. If the business of conducting a public dance hall, of the nature here in question, were out of the class we conclude it to be in, as above noticed, there would be grounds for so arguing; but,

since the business is one which, by the exercise of the police power, can be wholly suppressed, and especially since the amusement company took its license under the ordinance which expressly reserves to the city authorities the summary exercise of the police power in question, we are unable to see that the amusement company has any valid claim of infringement upon any of its constitutional guaranties.

In *State ex rel. Aberdeen v. Superior Court,* 44 Wash. 526, 87 Pac. 818, and *State ex rel. Puyallup v. Superior Court,* 50 Wash. 650, 97 Pac. 778, this court upheld the plenary power of each of those city councils, without court review, to revoke an intoxicating liquor license. In *State ex rel. Pasco v. Superior Court,* 49 Wash. 268, 94 Pac. 1086, this court upheld the plenary power of the city council, without court review, to refuse to grant a liquor license. In *State ex rel. Reedhead v. Olympia,* 122 Wash. 239, 210 Pac. 371, this court again upheld the plenary power of the city council, without court review, to refuse the granting of a pool hall license. In this last cited case, answering contentions rested upon certain of our previous decisions, we said:

"Counsel for the relator calls our attention to, and relies upon, our decisions in *Seattle v. Gibson,* 96 Wash. 425, 165 Pac. 109; *State ex rel. Makris v. Superior Court,* 113 Wash. 296, 193 Pac. 845; and *Vincent v. Seattle,* 115 Wash. 475, 197 Pac. 618, as sustaining the argument that the ordinance is invalid for the reason that it establishes no standard of qualifications and provides for no notice or hearing, and allows the city council freedom to exercise favoritism in granting licenses.

"Upon an examination of these cases, it will be immediately noticed that they were cases dealing with businesses which were not in themselves injurious or harmful, and were such lawful businesses as it was not within the power of a city council to prohibit, but

were such as were within the police power of the city
to supervise and regulate. The first case dealt with a
drug store, the second with a candy and soft-drink
stand, and the third with a merry-go-round and Ferris
wheel. But the case before us is one relating to the
conduct of pool halls; a business which has been re-
cently characterized by this court in *State ex rel. Sayles
v. Superior Court,* 120 Wash. 183, 206 Pac. 966, as
being a business so fraught with injurious results that
it could not be classified as a non-prohibitable busi-
ness, and that it is one of those businesses the allowing
of which is a privilege and not a right.''

In *Mehlos v. Milwaukee,* 156 Wis. 591, 146 N. W. 882,
51 L. R. A. (N. S.) 1009, the court had under consid-
eration a public dance hall ordinance regulation read-
ing as follows:

''The chief of police, a captain, a lieutenant, or a
sergeant of police, shall have the power, and it shall
be their duty, to cause the place, hall, or room where
any dance or ball is held or given to be vacated when-
ever any provision of any ordinance with regard to
public dances and public balls is being violated, or
whenever any indecent act shall be committed, or when
any disorder of a gross, violent, or vulgar character
shall take place.''

Holding this not to be an unconstitutional summary
exercise of the police power, Justice Marshall, speak-
ing for the court, very pertinently observed:

''Complaint is made of conferring discretionary
power upon the officials to act without any opportunity
for any sort of a hearing. There is nothing novel
about that, nor undue restraint upon liberty or prop-
erty involved in it. It is a reasonably necessary pro-
vision for the preservation of good order. It would
be utterly useless to attempt to suppress such acts as
that feature of the ordinance is designed to reach, if
before action some sort of a judicial hearing were re-
quired. It must be remembered that the police power,
as before indicated, is grounded on necessity. The
basic reason for it renders details of dealing with a

particular subject legitimate which are reasonable under all the circumstances, and are not expressly prohibited.''

Manifestly, the theory of these decisions is that the businesses in question being of that class which, by the exercise of the police power, are subject to being wholly suppressed, the final determination of their licensing and to whom, if anyone, may be granted a license to conduct them, is an administrative and not a judicial question. We think it follows that, therefore the conditions under which any of these businesses may be conducted are wholly within the discretion of the administrative authorities having the power to license, regulate or prohibit them. Our decisions in *Davison v. Walla Walla,* 52 Wash. 453, 100 Pac. 981, 132 Am. St. 983, 21 L. R. A. (N. S.) 454, and *State ex rel. McBride v. Superior Court,* 103 Wash. 409, 174 Pac. 973, lend further support to our conclusion that § 77 of Ordinance No. 48022 is constitutional, and that the decree of the superior court enjoining its enforcement, as therein provided, should be reversed.

The appeal of the amusement company is directed against the provisions of § 72 of Ordinance No. 48022, pratically against the summary method therein provided for the revocation of the permit and license by the chief of police and city council without further judicial inquiry. What we have already said with reference to the constitutionality of § 77 of the ordinance is applicable to § 72, and is decisive against this contention. So, we conclude that the summary exercise of the police power, as therein contemplated, would not violate any of the constitutional rights of the amusement company, and that therefore the superior court did not err in refusing to decree that section invalid.

[4] Contention is also made by the amusement company that section 83-A of the ordinance is invalid, particularly that it is unreasonable in its restraint upon soliciting dancing partners upon a commission basis, and soliciting purchase of refreshments upon a commission basis. Being of the view, as above expressed, that the maintenance of a public dance hall, of the nature here in question, might be wholly suppressed in the exercise of the police power, we, of course, hold that the regulations embodied in this section are valid and do not infringe upon any constitutional right of the amusement company, and that therefore the superior court did not err in refusing to decree that section invalid.

One Meyers, joined with the amusement company as a plaintiff in this action, having a common interest in having Ordinance No. 48022 decreed invalid and unconstitutional in the particulars above noticed; he being the owner and operator of another similar public dance hall, for the operation of which he had a permit and license from the city under Ordinance No. 48022, granted after the enactment of all the sections of the ordinance above noticed. We have omitted referring to the controversy between him and the city, which is the same as the controversy between the amusement company and the city, merely for convenience of expression. Our decision against the amusement company is, of course, equally a decision against Meyers.

The judgment of the superior court is reversed, in so far as it enjoins the city from enforcing § 77 of Ordinance No. 48022, and affirmed in so far as it refuses to award to the amusement company any further injunctive relief against the city.

FULLERTON, C. J., TOLMAN, MITCHELL, and FRENCH, JJ., concur.