[No. 32005. *En Banc.* January 20, 1953.]

THE DERBY CLUB, INC., et al., *Appellants*, v. EVRO BECKET et al., *Respondents.*[1]

[1]Reported in 252 P. (2d) 259.

*Crippen & Flynn, Max R. Nicolai,* and *Hamlet P. Dodd,* for appellants.

*The Attorney General, Joseph P. Lavin* and *Herbert Springer, Assistants,* for respondents.

DONWORTH, J.—This is an appeal from a superior court judgment upholding the constitutionality of § 2, p. 303, of chapter 120 of the Laws of 1951, being legislation purporting to license the operation of bottle clubs. The title of the act is as follows:

"AN ACT relating to intoxicating liquors; regulating the sale and use thereof, amending section 66.44.190, R.C.W., and prescribing penalties."

There are two sections to the act. Section 1 specifically amends RCW 66.44.190, as derived from the Laws of 1933, Ex. Ses., chapter 49, § 1, p. 118. The section amended had made it unlawful to sell any intoxicating liquor on the grounds of the University of Washington or within a limited area adjacent thereto. This prohibition was re-enacted, but with a proviso permitting valid licenses for cocktail lounges, under certain restrictions, to nationally recognized veterans' organizations.

Section 2, here under attack, reads as follows:

"Sec. 2. There is added to title 66, R.C.W., as derived from

chapter 62, Laws of 1933, Extraordinary Session, a new section to read as follows:

" 'Bottle club' means a club or association operating for profit or otherwise and conducting or maintaining premises in which the members or other persons may resort for the primary or incidental purpose of keeping or consuming liquor on the premises.

"Except as permitted under a license issued by the Washington state liquor control board, it is unlawful for any person to conduct or maintain by himself or by associating with others, or to in any manner aid, assist, or abet in conducting or maintaining a bottle club."

(In the interest of brevity, this section of the Laws of 1951, chapter 120, will hereinafter be referred to merely as § 2.)

This act, if constitutional, became effective June 6, 1951.

The Derby Club, Inc., commenced this action July 10, 1951, alleging that it is a nonprofit corporation, that it maintains club rooms wherein members are permitted to bring and consume their own liquor, that the club furnishes incidentals to such consumption, and that it has made substantial expenditures on its facilities; that, unless the enforcement of § 2 is restrained, the plaintiff and its employees will be arrested and prosecuted on a criminal charge for operating a bottle club as defined in § 2, *supra*. The plaintiff asks that § 2 be declared null and void as being unconstitutional or, in the alternative, if the court upholds the constitutionality of § 2, that the court decree that the club is entitled to present its application for a license under that section.

Three other clubs filed complaints in intervention, making substantially the same allegations and asking substantially the same relief; but, in addition, two of them, Club Grand Union and White Center Athletic Club, alleged a violation by the legislature of the state constitution, Art. II, § 38.

The trial court issued an order restraining any attempt to enforce § 2, which temporary restraining order was, after a hearing, continued as an injunction *pendente lite* by an order made and entered November 5, 1951. Demurrers were thereafter sustained to the complaint of The Derby Club, Inc., and to the complaints in intervention, and, December 5, 1951, an order was entered dismissing the complaint and the com-

plaints in intervention. The plaintiff and the three plaintiffs in intervention have appealed and attack the constitutionality of the legislation upon four grounds:

*First, that it violates Art. II, § 19, of the state constitution,* which provides: "No bill shall embrace more than one subject, and that shall be expressed in the title."

*Second, that it violates Art. II, § 38, of the state constitution,* which provides: "No amendment to any bill shall be allowed which shall change the scope and object of the bill."

*Third, that it violates Art. II, § 37, of the state constitution,* which reads: "No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length."

*Fourth, that it violates the due process and equal protection clauses of both the Federal and state constitutions,* because it is vague, uncertain, unintelligible, and fails to furnish a definition or description of any act or conduct prohibited. (United States constitution, fifth and fourteenth amendments; state constitution, Art..I, § 3.)

Since the judges concurring in this opinion believe that § 2 is unconstitutional upon the fourth ground stated above, it is not necessary to discuss the first three grounds of alleged invalidity. We therefore proceed to a consideration of our reasons for holding that § 2 violates the due process clause of the Federal and state constitutions.

While the appellants, in their complaints, make allegations concerning their leases, obligations, commitments to orchestras, and the amounts expended for furniture, fixtures, equipment and decorations, we do not understand them to contend that either the "due process" or the "equal protection" clause of the Federal or state constitution prevents the legislature from enacting a law making their operations unlawful. The termination of the right to engage in the business of operating a bottle club does not violate any inherent or constitutional right. When appellants made their investments and their commitments, it was with knowledge that their business existed not by right but by sufferance and that

there was no guarantee, express or implied, of its continued existence.

■ Legislation regulating or even prohibiting the manufacture, sale, serving or possession of intoxicating liquor is regarded as "an exercise of the police power of the state, for the protection of the welfare, health, peace, morals, and safety of the people of the state. . . ." RCW 66.08.010; cf. Rem. Rev. Stat. (Sup.), § 7306-2. That the police power of the state is plenary with respect to intoxicating liquor is so well established as to need no citation of authority; however, see *State v. Nicolls,* 61 Wash. 142, 112 Pac. 269 (1910); *Tacoma v. Keisel,* 68 Wash. 685, 124 Pac. 137 (1912); *Bungalow Amusement Co. v. Seattle,* 148 Wash. 485, 269 Pac. 1043, 60 A.L.R. 166 (1928); *Ajax v. Gregory,* 177 Wash. 465, 32 P. (2d) 560 (1934); *State ex rel. Thornbury v. Gregory,* 191 Wash. 70, 70 P. (2d) 788 (1937); *State v. Lake City Bowlers' Club,* 26 Wn. (2d) 292, 173 P. (2d) 783 (1946); *Randles v. Washington State Liquor Control Board,* 33 Wn. (2d) 688, 206 P. (2d) 1209, 9 A.L.R. (2d) 531 (1949).

Appellants do strenuously argue on the fourth constitutional issue that § 2 is "vague, uncertain and indefinite" because no standards are established by which to determine who is entitled to a bottle club license. Their position is that, since § 2 purports to define a crime and they are threatened with prosecution under it, § 2 is void because it is impossible for a person of ordinary intelligence to understand what acts are forbidden by it.

In passing upon this contention, we should consider the language employed in this amendment in the light of the history of the Washington state liquor act.

After defining the term bottle club, the legislature provided:

*"Except as permitted under a license issued by the Washington state liquor control board,* it is unlawful for any person to conduct or maintain by himself or by associating with others, or to in any manner aid, assist, or abet in conducting or maintaining a bottle club." (Italics ours.)

The Washington state liquor act (Chapter 62, Laws of 1933, Ex. Ses.) made provision for licensing bottle clubs in § 23 (7), p. 186, which read as follows:

"License to clubs, entitling each member of the club to keep on the premises a reasonable quantity of liquor for personal consumption on the premises: *Provided*, That no club shall be entitled to such a license

"a. Unless such club had been in operation at least three years prior to the effective date of this act, or, the club, being thereafter formed, had been in continuous operation for at least one year immediately prior to the date of its application for such license: *Provided*, That by unanimous vote the board may waive the provisions of this subsection;

"b. Unless the club premises be constructed and equipped, conducted, managed and operated to the satisfaction of the board and in accordance with this act and the regulations made thereunder;

"c. Unless the board shall have determined pursuant to any regulations made by it with respect to clubs, that such club is a bona fide club; fee: $100.00."

Parenthetically, the Derby Club, Inc., and Truckers' Club, Inc., each alleged that it was granted a license under this section prior to December 2, 1948.

In 1937, the license fee was increased from one hundred dollars to three hundred dollars. Otherwise, this provision remained in effect for sixteen years (1933 to 1948) without change until initiative No. 171 was adopted by the people. That measure provided for the sale of liquor by the drink by hotels, restaurants, and clubs upon their procuring a class H license from the state liquor control board.

Initiative No. 171 expressly repealed the provision of the act relating to licensing clubs for the purpose of permitting their members to keep on the premises a reasonable quantity of liquor for personal consumption.

Thus, from December 2, 1948, to June 8, 1951, the Washington state liquor act contained no provision for granting licenses to clubs to operate as bottle clubs, but gave permission to clubs to sell liquor by the drink after obtaining a class H license under initiative No. 171.

During this period, in answer to an inquiry from a mem-

ber of the legislature as to the legal status of bottle clubs under initiative No. 171, the attorney general rendered an opinion (November 22, 1950) concluding as follows:

"Our conclusions may be summarized as follows:

"1. The law today does not require a bona fide private club to be licensed by the liquor control board in order for its members to bring onto the club premises their own liquor and to consume the same there.

"2. Whether or not a club is operating illegally is a question of fact."

Whether this opinion correctly stated the law, we need not decide. We refer to it only as being part of the background as to the legal status of bottle clubs at the time § 2 was enacted.

Two other sections of the Washington state liquor act should also be considered because they have a direct bearing on the problem.

Section 28, which is still in effect, provides:

"Any person doing any act required to be licensed under this act without having in force a license issued to him under this act shall be guilty of a violation of this act."

Section 92 contains this provision:

"1. Every person who violates the provisions of section 28 shall be guilty of a gross misdemeanor.

. . . .

"4. A gross misdemeanor and the penalty therefor shall be as otherwise provided by the laws of this state."

This was the situation existing when § 2 was enacted as an amendment to the Washington state liquor act.

What was the legislative intent in enacting § 2: Was it to prohibit bottle clubs entirely or was it to regulate their operations?

■ If the intent had been to prohibit bottle clubs entirely, it would have been a simple matter for the legislature to have done so in express words. It did not do so, but provided that, "except as permitted under a license issued by the Washington state liquor control board," no one shall operate a bottle club. Under the firmly established rules of statutory interpretation, with which the members of the legislature were

doubtless familiar, the clause quoted in the preceding sentence cannot be regarded as mere surplusage. *Groves v. Meyers*, 35 Wn. (2d) 403, 213 P. (2d) 483, and cases cited.

The only reasonable interpretation of § 2 is that the legislature by enacting it manifested an intention to again make provision for the regulation of bottle clubs. Section 2 presumes the existence of licensing provisions applicable to bottle clubs. We must assume that the legislature was acting in good faith in thus amending the Washington state liquor act and that it meant what it said in § 2.

Respondents rely upon our decision in *State v. Lake City Bowlers' Club, Inc.*, 26 Wn. (2d) 292, 173 P. (2d) 783, as applicable here. That case, however, concerned itself with § 23T of the act, which, as above stated, was repealed in December, 1948, by initiative No. 171. As was recognized by the attorney general in his opinion of November 22, 1950, above referred to, the case is for that reason no longer applicable.

■ Respondents contend that the words "Except as permitted under a license issued by the Washington state liquor control board" mean that appellants may not operate a bottle club unless they have one or more of the presently authorized licenses applicable to clubs:

1. Class A license, authorizing the sale and consumption of beer on the premises;

2. Class C license, authorizing the sale and consumption of wine on the premises;

3. Class D license, authorizing the sale and consumption of pasteurized beer by the opened bottle on the premises;

4. Class H license, authorizing the sale and consumption of beer, wine and spiritous liquor by the drink on the premises.

These types of license all refer to the *sale* of alcoholic beverages. They are obviously not designed for the licensing of a bottle club, which, as defined in § 2, is a club in which the members are permitted to keep and consume their own liquor on the premises. Appellants do not seek to engage in the sale of alcoholic beverages. They desire to operate as a bottle club under a license similar to that which was for-

merly obtainable under § 23 (7) of chapter 62, Laws of 1933, Ex. Ses. This provision was repealed in December, 1948, and the legislature in enacting § 2 failed to make provision for the issuance of such license, nor did it prescribe any standards by which the liquor control board might grant or deny a bottle club license. Appellants are threatened with prosecution for operating a bottle club without a license when no such license is obtainable because the legislature has made it impossible for appellants to apply for or obtain one.

By making it a gross misdemeanor to operate a bottle club (which the attorney general had held was lawful prior to the enactment of § 2) unless the operator has procured a license issued by the Washington state liquor control board (for which the legislature failed to make any provision), the legislature denied appellants due process of law.

The second paragraph of § 2 is vague, uncertain, and unintelligible, because it prescribes no standards by which the liquor control board may determine who is and who is not entitled to a license to operate a bottle club. Only by reading out of the statute the words "Except as permitted under a license issued by the Washington state liquor control board" can § 2 be upheld. As above stated, this clause cannot be disregarded as mere surplusage. *Groves v. Meyers, supra.*

The following cases from other jurisdictions in which acts of the legislature were held to be void because they were found to be vague, uncertain, and unintelligible, are closely in point.

In *People v. Briggs,* 193 N. Y. 457, 86 N.E. 522, the defendant was held liable in the trial court for penalties imposed by an act of the legislature relating to the sale of certified milk. The defendant had sold such milk without marking it with the name of the association certifying it as required by the statute. In reversing the judgment and ordering the case dismissed because the statute was doubtful and uncertain, the court of appeals said:

"The only default on the part of the defendant was, therefore, in not having the bottles in which the milk was sold '*conspicuously marked* with the name of the association certifying it.' What is meant by the term 'association?' Did the

legislature intend by its use to refer to an association of milk dealers? Evidently not, for the purpose of the entire statute is to place restrictions upon the sale, by dealers, of milk that does not conform to its requirements. Did the legislature intend to refer to some association of doctors, lawyers or ministers? If so, to which? Is it a self-constituted, voluntary association, and if so, who are the persons composing it? It is quite possible that the legislature had in mind some sort of a medical association, but unfortunately it has failed to designate any particular association or individuals composing it, to whom the milk dealer could apply for the certification of his milk. This is a penal statute and a violator is not only liable for penalties but is also liable to be convicted for a misdemeanor, under which he may be punished by both fine and imprisonment. In construing penal statutes it is not our practice to go beyond the clear meaning and purpose of the statute and we should not attempt to spell out the creation of a new offense which is not clearly indicated by the ordinary meaning of the words used. (*Jones v. Estis*, 2 Johns. 379.) If a statute is doubtful and uncertain, or is such as to make it difficult or impossible to comply with its provisions it will be held to be of no force and effect."

An Illinois statute relating to the kind of glasses that could be used in the sale of liquor by the drink was held invalid by the supreme court of that state in *Baim v. Fleck*, 406 Ill. 193, 92 N.E. (2d) 770, in the following language:

"The question remains whether the provisions of section 24 are unconstitutional. They are as follows: 'No person or persons licensed to sell liquor at retail for consumption on the premises shall use in such sales or possess on such premises any glass or other container so constructed as to be deceptive in appearance or to mislead the consumer as to its true capacity.' (Ill. Rev. Stat. 1949, chap. 43, par. 144b.) Plaintiff's attack on the validity of this section is based upon two contentions: First, that its provisions are so vague and indefinite that persons subject to the act cannot ascertain whether the use of any particular container will render them liable to the penalties; and, second, that by prohibiting the mere possession of any container 'deceptive in appearance' the act is unreasonable and arbitrary.

"It is axiomatic that a statute, to be valid, must not be vague, indefinite and uncertain. It must be sufficiently explicit to advise those whom it purports to affect as to what their rights are and how they will be affected by its opera-

tion. Statutes which are so incomplete, vague, indefinite and uncertain that men of ordinary intelligence must necessarily guess at their meaning and differ as to their application, will not be upheld by the courts. (*Ill. Liquor Control Com. v. Chicago's Last Liquor Store*, 403 Ill. 578; *Krebs v. Thompson*, 387 Ill. 471, 477.) Applying this rule to the present provisions, it is apparent that they fail to satisfy its requirements. The phrases 'deceptive in appearance' or 'misleading as to capacity' convey no precise guide which the citizen can follow with any assurance that he is complying with the law. The determination of whether a particular glass is so constructed as to be deceptive in appearance or to mislead the consumer as to its true capacity must, in many cases, be wholly conjectural, and susceptible to differing answers by persons of ordinary intelligence."

The Wisconsin supreme court stated the applicable rule in *State ex rel. Husting v. Board of State Canvassers*, 159 Wis. 216, 150 N.W. 542, in these words:

"But if some parts of an act are bad, fundamentally, or otherwise incapable of execution, yet such parts were not so far the inducement to the entirety that the legislature would probably not have enacted the balance by itself, then the residue is to be approved and the invalid or fatally indefinite or contradictory parts condemned. If the enactment is so uncertain that the court is unable to determine, with any reasonable degree of certainty, what the legislature intended, *or it is so incomplete that it cannot be executed,* there is no other course open but to condemn it as void for uncertainty, as this court has done on other occasions, and other courts have done so often that the duty in that regard has become a matter of unwritten law. *Norton v. Reed*, 6 Wis. 522; *State v. Wentler*, 76 Wis. 89, 44 N.W. 841, 45 N.W. 816; Lewis's Sutherland, Stat. Constr. (2d ed.) § 86 and cases cited. As well said in *State ex rel. Crow v. West Side St. R. Co.* 146 Mo. 155, 47 S.W. 959:

" 'An act of the legislature, to be enforceable as a law, must prescribe a rule of action, and such rule must be intelligibly expressed. . . . It is manifest that an act of the legislative department cannot be enforced when its meaning cannot be determined by any known rules of construction. The courts cannot venture upon the dangerous path of judicial legislation to supply omissions, or remedy defects in matters committed to a co-ordinate branch of the government. *It is far better to wait for necessary corrections by those author-*

*ized to make them,* or, in fact, *for them to remain unmade, however desirable they may be,* than for judicial tribunals to transcend the just limits of their constitutional powers.' " (Italics ours.)

Other cases applying this rule are: *State v. Partlow,* 91 N.C. 550; *Hilburn v. St. Paul, M. & M. R. Co.,* 23 Mont. 229, 58 Pac. 551; *Jones v. Lawson,* 143 Ark. 83, 220 S.W. 311.

·The principle of law stated in the foregoing decisions was applied to a state statute by the supreme court of the United States in *Connally v. General Constr. Co.,* 269 U. S. 385, 70 L. Ed. 322, 46 S. Ct. 126, where a criminal statute was held violative of the fourteenth amendment because of indefiniteness. See, also, decisions cited therein.

██ Applying this principle to the allegations now before us, we are of the opinion that the second paragraph of § 2 is void. As heretofore stated, we cannot properly read out of the paragraph the words "Except as permitted under a license issued by the Washington state liquor control board," nor can we believe that the legislature intended the paragraph as a hoax merely to create an illusion of licensing for bottle clubs.

The second paragraph of § 2 is void because it is vague, uncertain, indefinite, and unintelligible and contains no standards for determining under what circumstances the liquor control board may grant or deny an applicant a bottle club license. The legislature may prohibit the operation of bottle clubs entirely or may regulate their operation in such manner as it sees fit, but it may not require, as a condition precedent to their lawful operation, the issuance by the liquor control board of a license which is nonexistent and unobtainable. The attempt to do so in the second paragraph of § 2 violates the due process clauses of the state and Federal constitutions.

The judgment dismissing the action is reversed and the ·cause remanded, with directions to overrule the demurrers to the complaint and complaints in intervention and for further proceedings in accordance with the views expressed herein.

MALLERY, HAMLEY, and FINLEY, JJ., concur.

HILL, J. (concurring in the result)—The majority opinion sets forth the four grounds on which the constitutionality of § 2 is assailed. The majority relies on the fourth ground, that the section in question is vague, uncertain, and indefinite.

Section 2 prohibits bottle clubs unless they can secure a license from the Washington state liquor control board; the board is not empowered to issue a license under which a bottle club, as defined, can be operated; *ergo*, it is unlawful to operate a bottle club. The route followed by the legislature to reach that end may be circuitous, but it is not vague, uncertain, or indefinite; none of the appellants are deceived or confused. We frequently say that what cannot be done directly should not be accomplished indirectly, but there is no apparent reason in the present case why that which could be done directly (*i.e.*, the prohibition of bottle clubs) should not be done indirectly (*i.e.*, by prohibiting bottle clubs to operate without a license, and making no provision for such a license).

While I do not agree with the majority that § 2 is vague, uncertain, and indefinite, I arrive at the same result (*i.e.*, the conclusion that the legislation in question is unconstitutional) on the second ground set forth on page 3 of the majority opinion, *i.e.*, that it violates Art. II, § 38 of the state constitution, which provides, "No amendment to any bill shall be allowed which shall change the scope and object of the bill."

The complaints of two of the appellants contain the following allegations:

"That Chapter 120 originated as Senate Bill No. 174 and as shown by the legislative Journal of the Senate and House of Representatives, 1951 Session, was introduced January 31, 1951 at which time it was an act 'Prohibiting the sale of intoxicating liquors on or near the grounds of the University of Washington, and amending Section 66.11.19 R.C.W.'. That on the 58th day of the legislative Session, on March 6, 1951, Senate Bill No. 174, as shown by the Journal of the House of Representatives, was amended in the House of Representatives by adding to Senate Bill No. 174, Section

2 of Chapter 120 and by obtaining the present title of this act."

The respondents, by their demurrer to those complaints in intervention, admit that the legislature violated Art. II, § 38 of our constitution, but say that the court will not go behind an enrolled enactment to determine the method, the procedure, the means, or the manner by which it was passed in the houses of the legislature.

An admitted and flagrant violation of the same constitutional provision was before us in *Power, Inc. v. Huntley*, 39 Wn. (2d) 191, 235 P. (2d) 173. We there said:

"Appellants [state tax commissioners *et al.*] do not deny that this constitutional provision was violated. Their position, briefly stated, is: 'So what? There isn't anything the court can do about it because, under its repeated decisions, there is no way it can know what happened.'

"That is the position always taken in argument when a question (not now before us) is raised concerning the validity of legislation enacted in a regular session after the sixtieth day. Art. II, § 12. It may or may not be, as argued, that the limitations of Art. II, §§ 12 and 38, are binding only upon the legislative conscience, and that the courts must perpetually remain in ignorance of what everybody else in the state knows. We refrain from any consideration of this further constitutional question urged upon us by the respondents, and of the 'So what' answer of the appellants, as being unnecessary to the disposition of the present appeal."

As indicated, the respondents here rely upon the "enrolled bill rule," which is that an enrolled bill, when fair upon its face, must be accepted by the courts as having been regularly enacted by the legislature. There is no doubt that this court has long since committed itself to that rule and has frequently restated it. No better statement of the reasons for the rule can be found than in Judge Hoyt's frequently quoted and widely praised opinion in *State ex rel. Reed v. Jones*, 6 Wash. 452, 34 Pac. 201, 23 L. R. A. 340 (1893). See, also, *Parmeter v. Bourne*, 8 Wash. 45, 35 Pac. 586, 757 (1894); *Scouten v. Whatcom*, 33 Wash. 273, 74 Pac. 389 (1903); *Gottstein v. Lister*, 88 Wash. 462, 153 Pac. 595

(1915); *State ex rel. Dunbar v. State Board of Equalization*, 140 Wash. 433, 249 Pac. 996 (1926); *Morrow v. Henneford*, 182 Wash. 625, 47 P. (2d) 1016 (1935); *Shelton Hotel Co. v. Bates*, 4 Wn. (2d) 498, 104 P. (2d) 478 (1940); *State ex rel. Bugge v. Martin*, 38 Wn. (2d) 834, 232 P. (2d) 833 (1951).

In the opinion in *Power, Inc. v. Huntley, supra*, the writer avoided that which I cannot here evade, namely, a consideration of whether the court should ever go behind an enrolled bill. Even in the face of the great array of authority to the contrary, I cannot escape the conviction that the enrolled bill rule should not be a shibboleth which will protect violations of the constitutional provisions by the legislature where such violations are matters of common knowledge or where the violation is established by the legislature's own journal records, especially when the constitutional question is raised immediately after the enactment of the legislation in question. Nor can I forbear the comment that each of the three co-ordinate branches of government should recognize that a disregard of the constitutional restrictions and limitations placed upon it can undermine respect for law and constitutional government just as effectively as can the subversives who are currently causing us great concern.

WEAVER, J. (concurring in the result)—I concur in the result reached by the majority opinion but for a different reason.

The pleadings admit and the journals of the house and senate disclose that chapter 120 of the Laws of 1951 was enacted in violation of Art. II, § 38, of the state constitution, which provides:

"No amendment to any bill shall be allowed which shall change the scope and object of the bill."

The purpose, necessity, and importance of this constitutional provision are apparent to everyone acquainted with the legislative process.

The house and senate journals are public records. Art. II, § 11, Washington constitution. When the challenge of

the constitutionality of the enactment process is based upon these records, and brings them before us, we may and must consider them. If they disclose that a statute has been adopted in a manner contrary to Art. II, § 38, we should follow the express terms of the constitution and declare the statute thus adopted unconstitutional.

"Public policy and convenience" are given as the reasons supporting the "enrolled bill" rule announced in *State ex rel. Reed v. Jones*, 6 Wash. 452, 34 Pac. 201, 23 L. R. A. 340. However, when the legislative journals themselves disclose a constitutional defect, which is the situation pleaded in this case, neither reason, to my mind, overbalances the scale in favor of disregarding Art. II, § 38.

OLSON and SCHWELLENBACH, JJ., concur with WEAVER, J.

GRADY, C. J. (dissenting)—I find nothing vague or uncertain about § 2, p. 303, of chapter 120 of the Laws of 1951 relating to bottle clubs. The statute is a part of the legislative evolution of the control of intoxicating liquor used as a beverage. Bottle clubs as defined must be strictly regulated or they are capable of great harm by reason of overindulgence on the part of their patrons. In aid of such regulations, such clubs may be required to secure a license from public authority. That authority may impose conditions and prescribe rules and regulations of conduct. The statute makes it unlawful to conduct or maintain a bottle club unless a license so to do is secured from the state liquor control board. The legislature has chosen to leave it to the board to determine whether bottle clubs may operate instead of so providing directly. Inasmuch as the use of intoxicating liquor as a beverage may be prohibited, regulatory legislation does not present any question of unlawful delegation of power. The plain purpose and effect of the statute is to authorize the liquor board to issue licenses to operate, conduct and maintain bottle clubs. The board is vested with authority to issue the special kind of a license needed, and it is not limited to the kinds of licenses authorized by other legislation.

It may be that the title is not sufficiently definite so that one who might violate its terms could be properly charged with a criminal offense, but this does not render it unconstitutional so as to prevent a bottle club from being operated and maintained pursuant to the terms and conditions of a license. Much greater latitude with reference to the issuance of a license can be extended to the liquor board than is the case where the subject matter is a business which a person has a legal right to engage in but which may be licensed for the purpose of regulation, or revenue, or both. In the latter case, the due process and equal protection clause of the Federal and state constitution must be given full force and effect, while in the former case they apply, if at all, to a very limited extent. I find no constitutional objections to the act in question with reference to such provisions of the constitution.

I am of the opinion that the title to the act meets the tests we have prescribed in many of our cases and that the provision of our constitution with reference to revision or amendments of our acts does not apply.

I am a firm believer in the soundness of the "enrolled bill rule" as recognized in *State ex rel. Reed v. Jones,* 6 Wash. 452, 34 Pac. 201, and subsequent cases. It is not within the province of the courts to take notice of or inquire into the methods used by the legislature in enacting legislation.

The appellants, on the present state of the record, are entitled to the alternative relief asked by their complaint.